Public Employee Labor Relations Board
No. 97-147

APPEAL OF HILLSBORO-DEERING SCHOOL DISTRICT

(New Hampshire Public Employee Labor Relations Board)

July 16, 1999

*Soule, Leslie, Kidder, Sayward & Loughman*, of Laconia (*Bradley F. Kidder* and *Michael S. Elwell* on the brief, and *Mr. Elwell* orally), for the petitioner.

*Craig, Wenners & Craig, P.A.*, of Manchester (*Vincent A. Wenners, Jr.* and *Stephanie Stergiou Ferro* on the brief, and *Mr. Wenners* orally), for the respondent.

*Emmanuel Krasner*, of Farmington, by brief, for the Northern New England Organizing Council American Federation of Teachers, AFL-CIO, as *amicus curiae*.

*Steven R. Sacks* and *James F. Allmendinger*, of Concord, staff attorneys, by brief, for NEA-New Hampshire, as *amicus curiae*.

BRODERICK, J. The petitioner, the Hillsboro-Deering School District (school district), appeals the decision of the New Hampshire Public Employee Labor Relations Board (PELRB) that the school district committed an unfair labor practice by laying off members of the respondent, the American Federation of State, County and Municipal Employees Local 2715, Hillsboro-Deering School District Custodians (union), and subcontracting with private companies to perform their work at reduced wages and benefits. On appeal, the school district argues that the PELRB erred because (1) the school district had the contractual right to lay off employees, to modify the school district's organizational structure, and to alter the number of school district employees, and (2) the school district's actions were a protected managerial right under RSA 273-A:1, XI (1987). We affirm.

The school district and the union, the certified bargaining agent for custodial and maintenance workers employed by the school district, *see* RSA 273-A:8 (1987), were parties to a collective bargaining agreement (CBA) for the period of July 1, 1994, to June 30, 1997. The bargaining unit consisted of nine custodians, one inside maintenance worker, and one outside maintenance worker. At the start of the third year of the CBA, in an apparent effort to save money, the school district terminated all eleven members of the bargaining unit. Thereafter, it subcontracted their work to independent contractors who, at the urging of the school district, hired three of the eleven union members. The school district does not dispute that the employees hired by the independent contractors did the same work previously performed by the bargaining unit. The school district's decision to subcontract its custodial and maintenance services was not negotiated with the union.

On June 25, 1996, the union filed an unfair labor practice complaint against the school district. *See* RSA 273-A:6 (Supp. 1998). The union argued that laying off bargaining unit employees in order to subcontract with private companies to provide identical services violated RSA 273-A:5, I(h) and (i) (1987) by breaching the parties' CBA and by unilaterally changing the terms and conditions of employment. The school district argued that subcontracting custodial and maintenance services was within its sole discretion under the CBA and constituted "managerial policy within the exclusive prerogative of the public employer," RSA 273-A:1, XI. Following a hearing, the PELRB ruled in the union's favor and ordered the

school district to provide the terminated employees back wages and benefits. The school district's motion for rehearing was denied, and this appeal followed.

The question for our review is whether the PELRB correctly ruled that the school district committed an unfair labor practice by laying off bargaining unit employees, so it could subcontract with private companies to perform identical services, during the term of the CBA. "We defer to the PELRB's findings of fact, and, absent an erroneous ruling of law, we will not set aside the PELRB's decision unless the [school district] demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable." *Appeal of City of Nashua Bd. of Educ.*, 141 N.H. 768, 772, 695 A.2d 647, 650 (1997) (quotation omitted); *see* RSA 541:13 (1997). We conclude that the school district fails to meet this burden.

I

The school district first argues that laying off bargaining unit employees and subcontracting with private companies to perform their work was expressly authorized by the CBA. The school district points to the "management rights" article of the CBA, which stated in relevant part:

> [T]he [union] recognizes that the direction of the District operations; the determination of the methods and means by which such operations are to be conducted; the supervision, management and control of the District work force; the right to hire, promote, transfer, and lay off employees; the right, lawfully and for just cause, to demote, discipline, suspend or discharge employees; the right to determine hours and schedules of work and the work tasks and standards of performance for employees and all other rights and responsibilities not specifically provided in this Agreement, shall remain the function of management, all in accordance with RSA 273-A.
>
> . . . .
>
> The phrase "managerial policy within the exclusive prerogative of the public employer" shall be construed to include but shall not be limited to functions, programs and methods of the public employer, including the use of technology, the public employer's organizational structure, and the selection, direction and number of its personnel, so as to continue public control of governmental functions.

The school district contends that these provisions gave it the authority to (1) lay off employees for any reason, including budgetary or quality concerns, (2) modify its organizational structure by providing services through independent contractors rather than employees, and (3) reduce the number of employees by laying off all employees in bargaining unit positions. Because it claims it negotiated such rights as part of the CBA, the school district concludes that it could not have committed an unfair labor practice when it terminated all bargaining unit employees.

"A CBA is a contract between a public employer and a union over the terms and conditions of employment." *Appeal of Alton School Dist.*, 140 N.H. 303, 306, 666 A.2d 937, 940 (1995). When parties enter into a CBA, they obligate themselves to adhere to its terms, which are the product of their collective bargaining. "A public employer's unilateral change in a term or condition of employment . . . is tantamount to a refusal to negotiate that term and destroys the level playing field necessary for productive and fair labor negotiations." *Appeal of City of Nashua*, 141 N.H. at 772, 695 A.2d at 650-51 (quotation omitted). The union acknowledges that a true layoff or reorganization would not violate the CBA or constitute an unfair labor practice under RSA chapter 273-A. It argues, however, that the school district's termination of the entire bargaining unit was not a pure layoff or reorganization, and therefore the school district unilaterally and unlawfully changed the terms and conditions of employment. We agree.

The school district terminated all members of the bargaining unit and subcontracted with private companies to perform the same work duties. Thus, the school district's action did not result in a true layoff because the same jobs continued. *Cf. Appeal of Pritchard*, 137 N.H. 291, 293, 627 A.2d 102, 103 (1993) (layoff involves the termination of employment). Moreover, the school district's action did not result in a reorganization because the amount and nature of the work did not change.

While the school district may have had the management prerogative to change the amount or nature of the work performed by its bargaining unit, it could not lawfully terminate bargaining unit employees during the term of the CBA and subcontract with private companies to perform their work. In essence, the school district's actions created a wholesale change in the bargained-for wages and hours of its employees. If the school district wanted the prerogative to subcontract bargaining unit work, it should have specifically negotiated such a right into the CBA. Because it failed to do so, the

"management rights" provision of the CBA provides no refuge. *Cf. Appeal of City of Nashua*, 141 N.H. at 776, 695 A.2d at 653 ("management rights" article of CBA provided no refuge for employer who laid off full-time union employees and then hired various part-time employees to perform same duties at reduced wages and benefits).

The school district also argues that the parties intended the CBA to permit subcontracting of custodial and maintenance work because the school district privately subcontracted portions of its maintenance work in the past. The school district does not argue, however, that it subcontracted any bargaining unit work at the time the parties entered into the CBA. Nor does it contend that the union agreed to have the school district privately subcontract that work. *See C & M Realty Trust v. Wiedenkeller*, 133 N.H. 470, 476, 578 A.2d 354, 357 (1990) (court considers intent of parties at time agreement was entered into in arriving at its interpretation). Therefore, we need not address this argument further.

## II

The school district next asserts that even if the CBA does not sanction its conduct, the "managerial policy" exception under RSA chapter 273-A does. RSA 273-A:1, XI provides:

> "Terms and conditions of employment" means wages, hours and other conditions of employment other than managerial policy within the exclusive prerogative of the public employer, or confided exclusively to the public employer by statute or regulations adopted pursuant to statute. The phrase "managerial policy within the exclusive prerogative of the public employer" shall be construed to include but shall not be limited to the functions, programs and methods of the public employer, including the use of technology, the public employer's organizational structure, and the selection, direction and number of its personnel, so as to continue public control of governmental functions.

The school district relies on our decision in *State Employees' Association v. New Hampshire PELRB*, 118 N.H. 885, 396 A.2d 1098 (1978), to support its position that it could lawfully subcontract bargaining unit work to independent contractors as a matter of managerial policy. In 1994, however, we revisited this issue and delineated the parameters of the managerial policy exception. *Appeal of State of N.H.*, 138 N.H. 716, 720-22, 647 A.2d 1302, 1305-07

(1994). We recognized that our decision in *State Employees' Association* was made "without explaining how the managerial policy exception applied to the particular proposals," *id.* at 720, 647 A.2d at 1305, and adopted a three-prong test to determine negotiable and non-negotiable matters, *see id.* at 722-23, 647 A.2d at 1306-07. Accordingly, we apply this test to the facts of this case.

"First, to be negotiable, the subject matter of the proposed contract provision must not be reserved to the exclusive managerial authority of the public employer by the constitution, or by statute or statutorily adopted regulation." *Id.* at 722, 647 A.2d at 1306. The school district does not point to any constitutional provision, statute, or regulation that reserves to it the exclusive authority to lay off union employees and subcontract with private companies to provide the same services. *See Appeal of City of Nashua,* 141 N.H. at 774, 695 A.2d at 652. We reject the school district's bootstrapping attempt to use the statutory managerial policy exception as the statute that determines the scope and applicability of the managerial policy exception. *Id.*

"Second, the proposal must primarily affect the terms and conditions of employment, rather than matters of broad managerial policy." *Appeal of State of N.H.,* 138 N.H. at 722, 647 A.2d at 1306. "[O]ur cases have consistently recognized proposals and actions that primarily affect wages or hours as mandatory subjects of bargaining." *Appeal of City of Nashua,* 141 N.H. at 775, 695 A.2d at 652. Reduced to its essence, the school district's action in this case replaced bargaining unit employees with those of independent contractors to perform the same duties at reduced wages and benefits. *Cf. id.* at 774, 695 A.2d at 652 (city's reorganization, replacing employees who worked forty hours per week at over nine dollars per hour with greater number of employees who worked twenty hours per week at seven dollars per hour, "primarily affect[ed] the wages and hours of employees").

"Third, if the proposal were incorporated into a negotiated agreement, neither the resulting contract provision nor the applicable grievance process may interfere with public control of governmental functions contrary to the provisions of RSA 273-A:1, XI." *Appeal of State of N.H.,* 138 N.H. at 722, 647 A.2d at 1307. The school district argues that it subcontracted bargaining unit services in order to obtain higher quality work at less cost. The PELRB found, however, that the school district was primarily motivated by budgetary concerns. The PELRB noted that the school district's decision followed a study projecting $91,008 in yearly savings if the school district privately subcontracted bargaining unit work. More-

over, the record reveals that the school district urged the independent contractors to interview and consider hiring the eleven union employees. Based on this record, we cannot say the PELRB's finding was unreasonable. Therefore, limiting the school district's ability to unilaterally decide to subcontract with private companies for the same custodial and maintenance work performed by bargaining unit employees would not interfere with public control of governmental functions. The school district's decision to privatize custodial and maintenance services did not alter the school district's basic operations. It merely replaced existing employees with those of an independent contractor to do the same work under similar conditions of employment. Therefore, to require the school district to bargain about the matter would not significantly abridge its freedom to manage its operations. *Appeal of City of Nashua*, 141 N.H. at 775, 695 A.2d at 652.

■ Having determined that the school district's decision to subcontract bargaining unit work satisfied all three prongs of this test, we conclude that the matter was negotiable, and, therefore, the school district's unilateral action constitutes an unfair labor practice.

We have reviewed the school district's remaining arguments and find them to be without merit, warranting no further discussion. *Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

HORTON, J., with whom THAYER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: We are faced again with reviewing the line drawn by the New Hampshire Public Employee Labor Relations Board (PELRB) between the managerial prerogative of the employer and the protected rights of the employee under a collective bargaining agreement. Previously, in *Appeal of City of Nashua Board of Education*, we held that the PELRB correctly found an unfair labor practice where the Nashua School Board laid off all of its unionized full-time maintenance workers and hired part-time workers at less pay to perform the same duties. *Appeal of City of Nashua Bd. of Educ.*, 141 N.H. 768, 695 A.2d 647 (1997). We said that the reorganization was not within the managerial prerogative, but was negotiable. We said that the "reorganization primarily affect[ed] the wages and hours of employees rather than issues of broad managerial policy." *Id.* at 774, 695 A.2d at 652. We acknowledged that most issues of this nature have an impact in both realms

and call for a balancing to determine whether the impact is primarily on managerial matters or on the protected rights of the employees. *Id.* "[D]etermining the primary effect of the proposal requires an evaluation of the strength and focus of the competing interests." *Id.* (quotation and brackets omitted).

In the case before us, an analysis of the strength and focus of these interests leads me to a different conclusion. Here, the school board decided to privatize a function of school operation that it thought could be done better and cheaper by private contractors. Unfortunately, to accomplish this privatization, the school board had to lay off the entire maintenance crew. It was not laying off to rehire new workers at a cost saving, but to put a private contractor in charge with full responsibility for the function. In my opinion, such a "reorganization" is a classic example of managerial policy and outweighs the claim of impact on the terms and conditions of employment.

I would reverse the PELRB and dismiss the unfair labor practice claim. Therefore, I respectfully dissent.

THAYER, J., joins in the dissent.