Public Employee Labor Relations Board
No. 2010-438

APPEAL OF MATTHEW KENNEDY & a.
(New Hampshire Public Employee Labor Relations Board)

Argued: March 17, 2011
Opinion Issued: May 26, 2011

*James F. Allmendinger*, of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the petitioners.

*Drummond Woodsum & MacMahon*, of Portsmouth (*Mark A. Paige* on the brief, and *Matthew H. Upton* orally), for the respondent.

CONBOY, J. The petitioners, Matthew Kennedy and the Hinsdale Federation of Teachers (union), appeal the decision of the New Hampshire Public Employee Labor Relations Board (PELRB) denying their unfair labor practice claims against the respondent, the Hinsdale School District (school district). On appeal, the petitioners argue that the PELRB erred when it: (1) denied their claim that the school district had engaged in impermissible subcontracting; and (2) dismissed their claim that the school district violated its reduction-in-force policy. We affirm.

The administrative record supports the following facts. Kennedy was a music teacher in the Hinsdale Middle and High Schools for approximately ten years and a member of a bargaining unit represented by the union. The school district and the union were parties to a collective bargaining agreement (CBA), which contained a grievance procedure providing for, among other things, binding arbitration. The only matters excluded from the required grievance procedure were management prerogatives and teacher non-renewals. *See* RSA 273-A:1, XI (2010); RSA 189:14-a (2008).

Citing lack of student participation, the school district attempted to not renew Kennedy's employment for the 2008-2009 school year. *See* RSA 189:14-a (the "re-nomination" or "non-renewal" statute). This action was overturned by the state board of education on the grounds that the school district had failed to provide timely notice of non-renewal. On March 26,

2009, the school district again notified Kennedy that he was not being renewed due to declining enrollment.

Prior to Kennedy's non-renewal, the school district had two music teachers: Kennedy, who was in charge of the band program, and a second teacher who headed the choral program. This second teacher continues to be employed by the district. The history of the school's band program has been marked by steadily declining enrollment. In 1996, nearly seventy students participated in the band program. During the 2007-2008 school year, forty students participated. During the 2008-2009 school year, only twenty students participated in the band. Of these, five received credit, and fifteen participated on a "drop-in" basis, receiving no credit. Due to difficulties in rescheduling the band class after the petitioner's earlier non-renewal was overturned, the union and the school district had agreed that the class would be held after the end of the normal school day. For the 2009-2010 school year, only fourteen students indicated interest in participating in band.

Prior to the commencement of the 2009-2010 school year, the school district eliminated the Hinsdale band program and entered into an agreement with Brattleboro (Vermont) High School whereby interested Hinsdale students could receive credit for participation in Brattleboro's music offerings, including band and choral programs, music theory electives, after-school jazz band and madrigal groups, and music festival ensembles. The school district had previously entered into a similar arrangement for students to take vocational training courses at Brattleboro because of declining interest at Hinsdale. In addition, Hinsdale students could participate in the Winchester community band program, though not for credit. The school district also offered online music classes through the Virtual High School program.

The petitioners did not file a grievance concerning the school district's decision to not renew Kennedy's employment for the 2009-2010 school year. Rather, pursuant to RSA 189:14-a and RSA 189:14-b (Supp. 2010), which set forth appeal procedures available to a teacher who has been non-renewed, Kennedy appealed the decision to the Hinsdale School Board and, subsequently, to the state board of education. Each board affirmed the non-renewal after a hearing.

The petitioners also filed an unfair labor practice complaint with the PELRB, alleging that the district had violated RSA 273-A:5, I (2010) by: (1) non-renewing Kennedy in retaliation for his union activity; (2) violating the school district's reduction-in-force policy in connection with Kennedy's termination of employment; and (3) outsourcing the school band program. After a hearing, the PELRB granted the school district's motion to dismiss

the reduction-in-force claim, and denied the remaining claims. The petitioners appeal only the PELRB's rulings on their outsourcing and reduction-in-force claims.

The petitioners have the burden of proving that the PELRB's decision is clearly unreasonable or unlawful. RSA 541:13 (1997); *Appeal of Lisbon Reg. School Dist.*, 143 N.H. 390, 393 (1999). The PELRB's findings of fact are deemed *prima facie* lawful and reasonable, and we will not disturb its order unless it is erroneous as a matter of law or we are satisfied by a clear preponderance of the evidence that it is unjust or unreasonable. RSA 541:13; *Appeal of Lisbon*, 143 N.H. at 393.

The petitioners first argue that the school district's action in replacing Kennedy's position with the Brattleboro offerings, the Winchester community band, and the Virtual High School constituted impermissible subcontracting. The school district asserts that it properly exercised its right to change its curriculum under RSA 194-C:4 (Supp. 2010) (required superintendent services), RSA 194-C:5 (2008) (school board organization and duties), and the parties' CBA, which states that "educational policy, [and] the operation and management of schools . . . are vested exclusively in the [school] [b]oard."

■ The Public Employee Labor Relations Act requires public employers and employee organizations to negotiate in good faith over the terms and conditions of employment. RSA 273-A:3 (2010). A public employer's unilateral change in a term or condition of employment is tantamount to a refusal to negotiate that term. *Appeal of Hillsboro-Deering School Dist.*, 144 N.H. 27, 30 (1999). "Terms and conditions" of employment are defined as wages, hours, and other conditions of employment "*other than managerial policy* within the exclusive prerogative of the public employer." RSA 273-A:1, XI (emphasis added). Such managerial policy is defined in the Act as including, but not limited to, "the functions, programs, and methods of the public employer, including the use of technology, the public employer's organizational structure, and the selection, direction and number of its personnel, so as to continue public control of governmental functions." *Id.*

■ While managerial policy may include position creation and elimination, employee wages and hours are a mandatory subject of negotiation. *See Appeal of City of Nashua Bd. of Educ.*, 141 N.H. 768, 775 (1997) ("[A] public employer's 'greater' power to create or eliminate a position or program does not necessarily include the 'lesser' power to unilaterally determine wages and hours for the position or program."); *see also Appeal of Hillsboro-Deering*, 144 N.H. at 30; *Appeal of Berlin Educ. Ass'n*, 125 N.H. 779, 784 (1984) (a salary scale for extracurricular duties of teachers

was a mandatory subject of bargaining, but the decision to offer extracurricular programs and the number of such programs were a matter of managerial policy).

The prerogatives afforded to management, however, do not include the right to substitute subcontracted work for bargaining unit work. In *Appeal of Hillsboro-Deering*, we held that "[w]hile the school district may have . . . the management prerogative to change the amount or nature of the work performed by its bargaining unit, it [can]not lawfully terminate bargaining unit employees during the term of the CBA and subcontract with private companies to perform their work." *Appeal of Hillsboro-Deering*, 144 N.H. at 30. We recognized that the employer's actions in replacing union employees with independent contractors to perform the same duties at reduced wages and benefits had "[i]n essence . . . created a wholesale change in the bargained-for wages and hours of its employees." *Id.* However, we also noted that a true layoff or reorganization is within managerial policy and is not subject to an unfair labor practice claim. *See id.*

Relevant to our analysis here is the three-pronged test we have articulated for determining whether a particular proposal or action constitutes a mandatory subject of bargaining. First, "[t]o be negotiable, the subject matter of the [proposal] must not be reserved to the exclusive managerial authority of the public employer by the constitution, or by statute or statutorily adopted regulation." *Appeal of State of New Hampshire*, 138 N.H. 716, 722 (1994). "Second, the proposal must primarily affect the terms and conditions of employment, rather than matters of broad managerial policy." *Id.* "Third, if the proposal were incorporated into a negotiated agreement, neither the resulting contract provision nor the applicable grievance process may interfere with public control of governmental functions contrary to the provisions of RSA 273-A:1, XI [reserving matters of managerial policy to the employer]." *Id.* Negotiation over the public employer's action is mandatory only if all three prongs are met. *Appeal of City of Nashua*, 141 N.H. at 774.

Here, even assuming the first and third prongs of this test are satisfied, we cannot conclude that the second is satisfied; this is, we cannot conclude that the school district's action *primarily* affected the terms and conditions of employment, rather than matters of broad managerial policy. Of significance is the fact that Kennedy's job duties were not simply transferred to an outside contractor. Thus, this case is distinguishable from *Appeal of City of Nashua*, in which we held that a school board's dismissal of unionized custodial workers and subsequent hiring of part-time employees to perform the same duties at reduced wages and benefits constituted

an unfair labor practice. *Id.* at 776. In so holding, we recognized that, because the actual job duties to be performed remained the same, the action was one that primarily affected wages and hours. *Id.* at 774.

On the record before us, we agree with the PELRB's conclusion that the elimination of the Hinsdale band program was part of a reorganization within the district's managerial prerogative. As the PELRB noted, no outside contractor was hired to replace Kennedy as the Hinsdale band instructor. Moreover, the record supports the school district's conclusion that "the music program lack[ed] viability." A memorandum written by the Hinsdale Middle/High School principal noted that the limited performance opportunities offered to the band were of particular concern to the administration. For example, it was necessary for the band to be augmented with graduated students and members of the community in order to play at the 2008 graduation ceremony. Further, "a crucial factor in determining program viability" was a lack of participation in music offerings by high school freshmen and sophomores and middle school students, which indicated that interest was unlikely to rebound. Thus, the primary effect of the elimination of the band program was to alter the district's curricular offerings, not to transfer Kennedy's duties to another provider. Accordingly, we affirm the PELRB's decision on this issue.

The petitioners next argue the PELRB erred in dismissing their claim that the school district committed an unfair labor practice by terminating Kennedy's employment in violation of its reduction-in-force policy. They assert that the PELRB erred in determining that Kennedy's termination was a non-renewal rather than a reduction-in-force (RIF), and that a remand is necessary because the PELRB did not address the question of whether it had jurisdiction over the reduction-in-force claim. In its dismissal motion, the school district argued that the PELRB lacked jurisdiction over the petitioners' reduction-in-force claim because the petitioners had failed to exhaust the required grievance procedure.

In granting the school district's motion to dismiss, the PELRB ruled that Kennedy's termination was a non-renewal, not a reduction-in-force. The board stated, "The [petitioners] themselves treated Mr. Kennedy's termination as a non-renewal by utilizing an appeal procedure under RSA 189:14-b, the 'non-renewal appeal' statute, rather than filing a grievance as to the violation of the reduction-in-force policy, despite the fact that . . . violations of the reduction-in-force policy are not expressly excluded from the contractual grievance procedure."

We have held that while the PELRB has primary jurisdiction over unfair labor practice claims under RSA 273-A:5, *see* RSA 273-A:6, I (2010), it does not generally have jurisdiction to interpret the CBA when the CBA

provides for final binding arbitration. *Appeal of City of Manchester*, 153 N.H. 289, 293 (2006). Absent specific language to the contrary in the CBA, however, the PELRB is empowered to determine as a threshold matter whether a specific dispute falls within the scope of the CBA. *Id.* Thus, the PELRB is empowered to interpret the CBA to the extent necessary to determine whether a dispute is arbitrable. *Id.*

We disagree with the petitioner's assertion that the PELRB did not reach the jurisdictional question. The PELRB found that "violations of the reduction-in-force policy are not expressly excluded from the contractual grievance procedure." We interpret this as a ruling that violations of the reduction-in-force policy are reserved to binding arbitration by the grievance procedure and, therefore, outside the PELRB's jurisdiction. We find no error in this ruling. *See Appeal of Hooksett School Dist.*, 126 N.H. 202, 204 (1985) ("Absent a provision for binding arbitration following the grievance procedure . . . the PELRB, in the context of an unfair labor practice charge, has jurisdiction as a matter of law to interpret the contract . . . ."); *Appeal of State Employees' Assoc.*, 139 N.H. 441, 444 (1995).

Accordingly, we do not conclude that the PELRB's decision is erroneous as a matter of law or that it is unjust or unreasonable.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and LYNN, JJ., concurred.