NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Public Employee Labor Relations Board
No. 2017-0514

APPEAL OF STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE, INC.,
SEIU, LOCAL 1984
(New Hampshire Public Employee Labor Relations Board)

Argued: May 9, 2018
Opinion Issued: October 12, 2018

Glenn R. Milner, general counsel, State Employees' Association of New Hampshire, Inc., SEIU, Local 1984, of Concord, on the brief, and Milner and Krupski, PLLC, of Concord (John S. Krupski orally), for the petitioner.

Gordon J. MacDonald, attorney general (Nancy J. Smith, senior assistant attorney general, on the brief and orally), for the State.

LYNN, C.J. The petitioner, the State Employees' Association of New Hampshire, Inc., SEIU, Local 1984 (Union), appeals an order of the New Hampshire Public Employee Labor Relations Board (PELRB) finding that the respondent, the State of New Hampshire, did not commit an unfair labor practice by prospectively eliminating salary enhancements for newly hired Sununu Youth Services Center (SYSC) employees under the parties' collective bargaining agreement (CBA). We affirm.

The parties stipulated to, or the PELRB found, the following facts. The State operates the SYSC. The Union is the certified and exclusive bargaining

representative for certain SYSC employees, including teachers. As part of a consent decree resolving a federal lawsuit filed in the late 1980s, the State was required to pay certain SYSC employees salary enhancements in addition to their base wages. The State continued paying the salary enhancements after the consent decree expired in July 2002.

Since 2014, the Union has filed a series of unfair labor practice complaints concerning the State's attempts to eliminate those enhancements. In 2014, the Union alleged that the State unilaterally eliminated the salary enhancements for current employees while the 2013-2015 CBA was still in effect. The Union argued that this conduct was improper because the enhancements had become a binding past practice and, thus, subject to mandatory bargaining under RSA chapter 273-A. The State took the position that its obligation to pay the enhancements expired in 2002, when the consent decree expired, and that its practice of paying the enhancements had never been memorialized in the CBA. In addition, the State argued that, even if the salary enhancements had become a binding past practice, it had "cancelled" this practice by rejecting the Union's proposal to include the enhancements in the 2013-2015 CBA.

In a July 2014 order, the PELRB found that paying the salary enhancements was a binding past practice and, thus, subject to mandatory bargaining. The PELRB was not persuaded by the State's contention that it had "effectively cancelled the practice at the end of the term of the contract which preceded the 2013-[20]15 CBA" by rejecting the Union's attempt to include the enhancements in the 2013-2015 CBA. The PERLB found that the Union's proposal was "nothing more than an attempt by the [Union] to have an existing past practice reduced to writing and expressly described in the contract." That the State's rejection of the proposal did not reflect its understanding that salary enhancements would not be part of the 2013-2015 CBA was demonstrated by the fact that, despite the absence of contract language specifically incorporating the salary enhancements, the State continued to pay such enhancements after the 2013-2015 CBA took effect.

The PELRB also rejected the State's assertion that "it could unilaterally discontinue a past practice covering a mandatory subject of bargaining like wages at the end of the preceding contract's terms" in part because: (1) the State "announced its plans to terminate" the enhancements in February 2014, which fell within the term of the 2013-2015 CBA; and (2) "[u]nder the State's plan, the past practice would continue during a portion of the 2013-[20]15 CBA term." The State was ordered to restore the salary enhancements and to negotiate any future changes to the practice with the Union. The State neither requested a rehearing nor appealed the PELRB's decision.

In November 2014, the Union proposed to include the salary enhancements in the 2015-2017 CBA. The State rejected the Union's proposal

without any substantive discussion. Thereafter, when the State and the Union were unable to come to terms on a new CBA, the parties declared an impasse and, in January 2015, entered into the mediation phase of bargaining. During that phase, the Union withdrew its salary enhancement proposal upon reaching a tentative agreement with the State.

On February 26, 2015, the State notified the Union that "the current practice of salary enhancements at the SYSC, which is not part of our collective bargaining agreement, shall come to an end on July 1, 2015, or, in the case of an evergreen situation, when a new contract is effective, whichever is later, unless memorialized in the collective bargaining agreement." However, the State indicated that the salary enhancements would remain in place for teachers who were subject to the PELRB's 2014 decision. On March 5, 2015, the Union ratified the tentative agreement. During the CBA's "evergreen" period,[1] the State continued to pay salary enhancements to newly-hired SYSC teachers. The 2015-2017 CBA took effect in October 2015 and did not include salary enhancements for newly-hired SYSC employees. On or about July 8, 2016, the State hired a new part-time Library Media Specialist for whom it did not pay a salary enhancement. Thereafter, the Union filed the unfair labor practice complaint that is the subject of the instant appeal.

Based upon the parties' briefs, exhibits, and stipulated facts, the PELRB first determined that the instant action is not covered by the 2014 order. Proceeding to the merits, the PELRB found that the State had not committed an unfair labor practice and, thus, dismissed the Union's complaint. The PELRB explained that it was "satisfied that the State ha[d] taken the steps necessary to terminate the new hire salary enhancement past practice upon the effective date of the 2015-[20]17 CBA." According to the PELRB, the State's February 26, 2015 letter sufficiently notified the Union as to the State's desire to eliminate salary enhancements for prospective SYSC employees, and "there was an opportunity between February 26, 2015 and March 5, 2015" for the Union to bargain. The PELRB reasoned that the Union "had the right to suspend the ratification process," which was still "underway, . . . and demand that the State reopen negotiations to bargain based upon the State's February 26, 2015 notice letter." "Instead, the [Union] took no action in response to the State's February 26, 2015 notice letter and completed ratification of the tentative agreement on March 5, 2015." In the PELRB's view, the Union waived its bargaining rights, thus entitling the State to "implement the termination of salary enhancements for new hires consistent with its February 26, 2015 notice letter." The Union's motion for rehearing was subsequently denied. This appeal followed.

---

[1] An evergreen clause "purports to continue the terms of the contract indefinitely until the parties negotiate, and the legislative body ratifies, a successor contract." Appeal of Alton School Dist., 140 N.H. 303, 307 (1995).

"RSA chapter 541 governs our review of PELRB decisions." Appeal of Hillsborough County Nursing Home, 166 N.H. 731, 733 (2014); see RSA 273-A:14 (2010). "Pursuant to RSA 541:13 (2007), we will not set aside the PELRB's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable." Appeal of Prof'l Fire Fighters of Hudson, 167 N.H. 46, 51 (2014). "The PELRB's findings of fact are presumed prima facie lawful and reasonable." Id.; see RSA 541:13. "In reviewing the PELRB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record." Fire Fighters of Hudson, 167 N.H. at 51. "We review the PELRB's rulings on issues of law de novo." Id.

On appeal, the Union advances three arguments. First, the Union asserts that the PELRB erred by ignoring its past decisions without discussion. Second, it argues that the PELRB erroneously applied the federal "Notice and Bargain" rule, which, it contends, conflicts with New Hampshire law. Third, it posits that even if the federal rule comports with New Hampshire law, the PELRB erred in applying that rule to the facts of this case. We need not address these arguments because we hold that, on the record before us, the elimination of the salary enhancements was the product of normal bargained-for exchanges that produced the 2015-2017 CBA. See Appeal of N.H. Dep't of Safety, 155 N.H. 201, 203 (2007) (sustaining board's decision on valid alternative grounds).

"It is the obligation of the public employer and the employee organization certified by the board as the exclusive representative of the bargaining unit to negotiate in good faith." RSA 273-A:3, I (2010). "Good faith negotiation involves meeting at reasonable times and places in an effort to reach agreement on the terms of employment, and to cooperate in mediation and fact-finding required by this chapter . . . ." Id. (quotation omitted). The statute explains, however, that "the obligation to negotiate in good faith shall not compel either party to agree to a proposal or to make a concession." Id. Refusal by a public employer to negotiate in good faith constitutes an unfair labor practice. RSA 273-A:5, I(e) (2010).

According to the Union, as a mandatory subject of bargaining, the salary enhancements "can only be altered by mutual agreement of the parties," and there was no "opportunity, let alone a meaningful one, for [the Union] to bargain" over the salary enhancements prior to signing the 2015-2017 CBA. The Union is correct that an employer cannot unilaterally change a term or condition of employment. See Appeal of Hillsboro-Deering School Dist., 144 N.H. 27, 30 (1999). However, that is not what occurred here. The Union proposed to include the salary enhancements in the 2015-2017 CBA. After the State rejected the proposal, the Union had the opportunity to advocate for its inclusion in the CBA up to and including the time when the parties declared

impasse and entered into the mediation phase of bargaining. Instead, during mediation, the Union "withdrew the proposal . . . upon reaching a tentative agreement" with the State.

The Union's actions are significant, here, because in the context of collective bargaining, "an offer will remain on the table unless the offeror explicitly withdraws it or unless circumstances arise that would lead the parties to reasonably believe that the offeror has withdrawn the offer." N.L.R.B. v. Auciello Iron Works, Inc., 980 F.2d 804, 808 (1st Cir. 1992) (quotation omitted). The Union withdrew its proposal, which it knew the State had rejected, and agreed to a contract that did not include the salary enhancements. Indeed, "[i]n the face of a timely repudiation of" the salary enhancement practice, the Union chose to withdraw its proposal, rather than "have the practice written into the agreement." Richard Mittenthal, Past Practice and the Administration of Collective Bargaining Agreements, 59 Mich. L. Rev. 1017, 1041 (1961). In light of the State's rejection and the Union's subsequent withdrawal of the proposal, it cannot "be inferred from the signing of the [2015-2017 CBA] that the parties intended the practice to remain in force." Id. at 1040-41. The State's February 2015 letter simply confirmed its understanding that the salary enhancements would not continue because they were not included in the 2015-2017 CBA. By contrast, in the 2014 action, while the State rejected the Union's proposal to incorporate the salary enhancements into the 2013-2015 CBA, it continued to pay the salary enhancements even after that CBA took effect. Thus, the PELRB's 2014 decision reflects the fact that it was the parties' "common understanding" that the salary enhancement practice would "be continued until changed by mutual consent" of the parties during future negotiations. Id. at 1036 (quotation omitted). Such a change is exactly what occurred during the bargaining for the 2015-2017 CBA.

Based on the record before us, we conclude that, as a matter of law, the Union's withdrawal of the proposal during the mediation phase that led to the adoption of the 2015-2017 CBA establishes that elimination of the salary enhancements was a bargained-for result of the new CBA. See 51A C.J.S. Labor Relations § 888, at 631 (2010) ("If the facts before the board were such that all reasonable minds must honestly draw one conclusion therefrom the question is one of law for the court rather than one of fact for determination by the board."). In light of our conclusion, we need not decide whether the February 2015 letter, by itself, would have been sufficient to end the past practice between the parties based upon the Union's ratification of the CBA.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.