NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Public Employee Labor Relations Board
No. 2013-690


APPEAL OF PROFESSIONAL FIRE FIGHTERS OF HUDSON, IAFF LOCAL 3154
(New Hampshire Public Employee Labor Relations Board)

Argued: June 26, 2014
Opinion Issued: October 28, 2014


Molan, Milner & Krupski, PLLC, of Concord (John S. Krupski on the brief and orally), for the petitioner.


Drummond Woodsum & MacMahon, PA, of Portsmouth (Mark T. Broth and Laurel A.V. McClead on the brief, and Mr. Broth orally), for the respondent.


CONBOY, J. The petitioner, Professional Fire Fighters of Hudson, IAFF Local 3154 (Union), appeals a decision of the New Hampshire Public Employee Labor Relations Board (PELRB) finding that the respondent, the Town of Hudson (Town), did not commit an unfair labor practice. We affirm.

I.    Background

The following facts are drawn from the record, the PELRB decision, or are otherwise undisputed. The Town is a public employer within the meaning of RSA 273-A:1, X (2010). The Union is the certified exclusive bargaining

representative of certain members of the Town's fire department, including dispatchers, lieutenants, and firefighters. The Town and the Union have been parties to five collective bargaining agreements (CBAs) dating back to 1991. Under their most recent CBA, which covered the period of July 2006 through June 2009 ("2006 CBA"), the Union employees were eligible for step increases based upon their length of service, as outlined in a wage schedule appended to the agreement. The 2006 CBA did not contain an automatic renewal clause ("evergreen" clause) extending the terms of the agreement, in whole or in part, past its expiration date.

When each of the four earlier CBAs expired, but before the parties entered into a successor agreement, the Town provided Union members with step increases, despite the absence of an evergreen clause in the expired CBA. After the 2006 CBA expired in 2009, the Town's budget, which is approved by the Town's voters, included monies sufficient to fund step increases for eligible Union members in each of the budget years 2010, 2011, and 2012. All Union members received step increases between July 2009 and August 2011. In August 2011, the Town informed the Union by letter that the Town would no longer pay wage increases, including step increases. In response to the letter, the Union filed a grievance pursuant to the procedures in the 2006 CBA. The matter ultimately proceeded to arbitration.

At the hearing before the arbitrator, the Town and the Union stipulated that the issue in dispute was:

> Whether the Town of Hudson violated the Collective Bargaining Agreement or past practice between the parties when it failed to pay in accordance with the step schedule after August of 2011? If so, what shall the remedy be?

The Town argued that it had a right not to pay the step increases because the 2006 CBA did not have an evergreen clause and, under the applicable state law, a public employer is not required to pay step increases after a CBA has expired. The Union contended that the Town was required to pay the step increases because there was a binding past practice of paying such increases during status quo periods.

The arbitrator determined that a public employer may, but is not required to, refrain from paying step increases during the status quo period, and, "[t]herefore, if the employer chooses to fund and pay step increases it is capable, in concert with the Union, of creating a binding past practice." The arbitrator found that the initiation of step increase payments following the expiration of the parties' most recent collective bargaining agreement was the continuation of a past practice. Accordingly, the arbitrator concluded that the Town violated the 2006 CBA and past practice between the parties when it

failed to pay in accordance with the step schedule.  The arbitrator ordered the Town to pay the increases that had accrued since August 2011.

The Town failed to comply with the arbitrator's award.  The Union filed a complaint with the PELRB alleging that the Town's failure to comply constituted an unfair labor practice, see RSA 273-A:5, I(h), (i) (2010), and asking, in part, that the PELRB "order the Town to comply with the arbitrator's award."  In response, the Town argued that the arbitration award violated the requirements of RSA 273-A:3, II(b) (2010) (amended 2013) and was contrary to public policy.  The PELRB agreed with the Town, concluding that "[t]he arbitrator's award violates a strong and dominant policy, namely the need for approval by the local legislative body of the expenditure of public monies to fund benefits like step increases for bargaining unit employees both during a contract's express term and during any interval between collective bargaining agreements."  Accordingly, the PELRB found that the Town did not commit an unfair labor practice by failing to comply with the arbitrator's award and, therefore, dismissed the Union's complaint.  This appeal followed.

II.    Standard of Review

RSA chapter 541 governs our review of PELRB decisions.  Appeal of Hillsborough County Nursing Home, 166 N.H. ___, ___ (decided Sept. 12, 2014); see RSA 273-A:14 (2010); RSA 541:2 (2007).  Pursuant to RSA 541:13 (2007), we will not set aside the PELRB's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable.  The PELRB's findings of fact are presumed prima facie lawful and reasonable.  RSA 541:13.  In reviewing the PELRB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record.  Hillsborough County Nursing Home, 166 N.H. at ___.  We review the PELRB's rulings on issues of law de novo.  Id.

III.    Analysis

The Union argues that the PELRB erred in determining that the payment of step increases during the status quo period violated a strong and dominant public policy and that the PELRB exceeded its authority by divesting the arbitrator of the powers that the parties granted to him in their CBA and stipulated issue.  The Union further asserts that the PELRB erred by failing to address the Union's equitable arguments and by admitting evidence not presented at the arbitration hearing.  We address each argument in turn.

A.    Payment of Step Increases

The Union first argues that the PELRB incorrectly concluded that the payment of step increases during the status quo period violated a "strong and

dominant" public policy.  The Union contends that the payment of step increases during the status quo period did not constitute a "cost item" and was not prohibited by law; therefore, the Town could and did "bind itself, through a past practice, to pay step increases during the status quo period."  We disagree.

"Administrative agencies are granted only limited and special subject matter jurisdiction."  Appeal of Amalgamated Transit Union, 144 N.H. 325, 327 (1999) (quotation, brackets, and ellipsis omitted).  "Because administrative agencies act in a quasi-judicial capacity, agencies inherently have limited jurisdiction to apply strong and dominant public policy as expressed in controlling statutes, regulations, common law, and other applicable authority, to address matters necessary to resolve questions arising within the scope of their jurisdiction."  Id. at 327-28 (citation omitted).  "Just as this court will not enforce a contract or contract term that contravenes public policy, agencies may, within the confines outlined above, do the same" and may overrule an arbitrator's award.  Id. at 328 (quotation and citation omitted).

We begin with an overview of the current state of the law.  A CBA is a contract between a public employer and a union concerning the terms and conditions of employment.  Appeal of Alton School Dist., 140 N.H. 303, 306 (1995).  "[A]ny benefit acquired through collective bargaining whose implementation requires an appropriation by the legislative body of the public employer" is considered a "[c]ost item."  RSA 273-A:1, IV (2010).  Thus, "cost items" are limited by statute to benefits acquired through collective bargaining; they do not include financial payments made by the employer in its discretion.  See id.  The parties to a CBA are not bound by its cost items unless the legislative body ratifies them, which occurs only if the legislative body approves them with "full knowledge of their terms."  Alton School Dist., 140 N.H. at 307 (quotation omitted); see also Appeal of Sanborn Regional School Bd., 133 N.H. 513, 520 (1990) ("[W]hether express or implied, ratification . . . requires full knowledge of the financial terms of the collective bargaining agreement.").  "Only cost items shall be submitted to the legislative body of the public employer for approval . . . ."  RSA 273-A:3, II(b) (emphasis added); see Appeal of Laconia Patrolman Assoc., 164 N.H. 552, 557 (2013).  When a CBA ends, so do the benefits, including cost items, that were acquired through collective bargaining.  See Alton School Dist., 140 N.H. at 311.

Here, when the 2006 CBA expired, the benefits that the parties had acquired through collective bargaining also expired.  See id.  In the absence of a current CBA, the parties' "obligations to one another [we]re governed by the doctrine of maintaining the status quo."  Id. at 307.  "The principle of maintaining the status quo demands that all terms and conditions of employment remain the same during collective bargaining after a CBA has expired."  Id. (quotation and brackets omitted).  "This does not mean that the expired CBA continues in effect; rather, it means that the conditions under

4

which the [Union employees] worked endure throughout the collective bargaining process." Id. (quotation omitted).

We have consistently held that "[t]he status quo doctrine does not require payment of step increases after a CBA expires," Laconia Patrolman Assoc., 164 N.H. at 557 (quotation and brackets omitted), because, during the status quo period, the employer must maintain salary levels at the expiration of the CBA but not schedules of projected salary increases contained within the CBA, see Milton School Dist., 137 N.H. 240, 245 (1993). See Alton School Dist., 140 N.H. at 307. Thus, "a public employer retains the discretion, but not the obligation, to grant step increases during the status quo period." Laconia Patrolman Assoc., 164 N.H. at 557. Step increases granted at the employer's discretion during the status quo period are discretionary payments, not cost items within the meaning of RSA 273-A:1, IV, because they are not the product of collective bargaining. See id. However, a public employer may be required to pay step increases following the expiration of a CBA if the increases are mandated in an evergreen clause and such cost items have been ratified by the legislative body. See Alton School Dist., 140 N.H. at 312 (concluding that evergreen clause was cost item that required ratification to be enforceable).

The step increases at issue here were granted during the status quo period, in the absence of an approved evergreen clause; thus, because the increases were not acquired through collective bargaining, they were not cost items under the statute. See Laconia Patrolman Assoc., 164 N.H. at 557. Consequently, because the step increases were discretionary payments, the Town was not obligated to continue paying them. See id. The Union "does not contest the fact that the Town had the right not to pay [the] step increases." It argues, instead, that, under the facts of this case, the Town's past practice of paying step increases "created an obligation that was . . . tantamount to a waiver of that right." We are not convinced by the Union's argument; rather, we agree with the Town that the payment of step increases, even if a "past practice," remains a discretionary matter and does not subject the Town to a binding obligation. See Appeal of N.H. Dep't of Corrections, 164 N.H. 307, 309 (2012) (defining past practice).

Given our well-established rule that the status quo doctrine does not require payment of step increases after a CBA expires, Laconia Patrolman Assoc., 164 N.H. at 557, we hold that a "past practice" of granting step increases during the status quo period cannot, as a matter of law, render such increases a binding term and condition of public employees' employment, cf. N.H. Dep't of Corrections, 164 N.H. at 309. Here, "[b]ecause the decision to grant the step increases was discretionary, the [Town] remained free to rescind them." Laconia Patrolman Assoc., 164 N.H. at 557.

To conclude otherwise would allow the parties to a CBA to create — by their actions — a binding obligation to an expenditure of funds that otherwise

would require approval by the Town's legislative body.  Cf. Appeal of City of Franklin, 137 N.H. 723, 727 (1993) (concluding that monetary provisions in CBA were "cost items because, in the literal sense, implementation of the provisions 'require[d] an appropriation'" (quotation omitted)).  The Union acknowledges as much, recognizing that "a finding of a past practice would require [funding of the step increases] as a matter of law."  The law does not support this result.

We conclude that, in accordance with the "strong and dominant public policy" expressed in RSA chapter 273-A and our case law, the status quo doctrine did not require the Town to continue paying step increases after the 2006 CBA expired, even though it had previously provided such increases during the status quo period.  Accordingly, because the arbitrator's award violates this policy, the PELRB correctly concluded that the award is not enforceable.

We disagree with the Union to the extent that it argues that the Town was obligated to pay the increases in this case because the voters funded them.  It is undisputed that the Town published an approved operating budget for 2012 — after it had ceased paying the step increases — that included monies sufficient to fund the step increases for bargaining unit members.  The Town asserts that the Board correctly concluded that there was insufficient evidence to conclude that the Town properly warned the voters about the cost of the status quo step increases.  Regardless of the voters' knowledge of the costs, however, their funding of the step increases is not dispositive.  As we have previously held, Town votes approving funding for step increases during a status quo period do not obligate a public employer to pay the increases.  See Alton School Dist., 140 N.H. at 311.  This is so because it is the public employer, not the legislative body, that has the authority to negotiate and enter into collective bargaining agreements, and "[t]he vote of the legislative body is binding only with respect to cost items."  Id.  Allowing the voters to determine in the first instance — outside the collective bargaining process — which benefits the public employees will enjoy, "would frustrate the entire collective bargaining process set forth in RSA chapter 273-A."  Id.  Here, as discussed above, the step increases that the voters arguably funded were not benefits acquired through collective bargaining and, thus, were not cost items.  See id.

We, therefore, conclude that, even assuming that the voters funded the step increases with full knowledge of their financial terms, such action did not mandate that the Town make the payments during the status quo period.  We are also unconvinced by the Union's argument that the Town's "failure to pay [the] agreed upon and funded increases destroys the level playing field necessary for full and fair negotiations between a public employer and a public employee."

6

Finally, given our holding, we reject the Union's argument that the PELRB erred in allowing the "discontinuance of step increase[s] retroactive to August of 2011, although [its] decision was not rendered until July 11, 2013." Requiring the Town to retroactively pay step increases for the period before the PELRB's decision would contravene our determination that the Town was not obligated to pay the increases at all.

### B.     Right to Contest Arbitrator's Award

The Union next advances several arguments challenging the Town's ability to contest the arbitrator's award. The Union first argues that the "PELRB erred when it contravened the stipulated power of the arbitrator to determine if a past practice existed and to fashion a remedy." It asserts that the Town authorized the arbitrator to bind the parties, and, therefore, waived its ability to contest the arbitrator's decision. We disagree. Simply because the Town agreed to submit a stipulated issue to arbitration does not mean that it agreed to be bound by a decision that violates public policy. As we explained above, the PELRB has the authority to decline to enforce an arbitrator's award that violates a strong and dominant public policy. See Amalgamated Transit Union, 144 N.H. at 327-30 (finding without merit Union's argument that public employer committed unfair labor practice by rejecting the arbitrator's decision and affirming PELRB's finding that arbitrator's award violated public policy); Appeal of Merrimack County, 156 N.H. 35, 47 (2007) (affirming PELRB decision ordering county to comply with arbitrator's award because it did not violate public policy). Therefore, the PELRB did not err in deciding the issue.

Next, the Union raises three arguments asserting that the Town was time-barred from contesting the enforceability of the arbitrator's award. The Union first argues that the Town alleged that the Union made a wrongful demand to arbitrate but failed to oppose the arbitration within the necessary timeframe. In the alternative, the Union asserts that the Town did not timely challenge the substantive arbitrability of the dispute. Finally, the Union contends that the Town did not timely challenge the enforceability of the arbitrator's award. The Union argues that, under each of these theories, the Town did not contest the arbitration within the statutory time limits established in RSA chapter 273-A, and, therefore, the PELRB was without jurisdiction to decide whether the arbitrator's award violated a strong and dominant public policy.

The Union mischaracterizes the assertions that the Town made to the arbitrator. The Town did not allege that the Union made a wrongful demand to arbitrate. Rather, it alleged that it had the discretion to stop paying the step increases during the status quo period. Also, as the arbitrator noted, the Town did not argue that the dispute was not substantively arbitrable, and nothing in the Town's filings before the PELRB can be read to challenge the substantive arbitrability of the Union's complaint. Because the Town did not contend that

7

the Union made a wrongful demand to arbitrate and did not challenge substantive arbitrability, it was not restricted by the statutory time frames. Instead, as the PELRB noted, the Town challenged the validity of the arbitrator's decision on public policy grounds. Because such a challenge necessarily could not arise until after the arbitrator issued his decision, the Town was not time-barred from contesting the enforceability of the decision.

We recognize that the Town's answer to the Union's PELRB complaint asserted a "counterclaim" that "[i]t is an unfair labor practice for the Union to seek enforcement of an arbitration award that is unlawful" or "contrary to public policy." The PELRB, however, noting that its rules "do not allow for the filing of a counterclaim," treated these allegations "as part of the Town's answer and defense . . . and not an unfair labor practice charge." Even if we were to assume that the Town's allegation constituted an unfair labor practice charge, it would not have been time-barred because the claim arose only upon the Union's attempt to enforce the arbitrator's award. See RSA 273-A:6, VII (2010) (requiring PELRB to dismiss complaints regarding alleged violations that occurred more than six months before complaint was filed). Thus, we conclude that the Town did not waive its right to challenge the award on public policy grounds by not raising the issue earlier.

C.    Laches

The Union further argues that the PELRB erred by failing to address its argument based upon laches. The Union is correct that the PELRB did not address its laches argument. Because neither party argues otherwise, we assume, without deciding, that the PELRB would have had jurisdiction to decide such an equitable claim. But see Appeal of Somersworth School Dist., 142 N.H. 837, 841 (1998) (recognizing that the PELRB's broad jurisdiction applies only to those matters specifically encompassed by the pertinent statutes, and that those statutes do not give the PELRB the ability to grant all equitable remedies). We recognize that the application of laches, as an equitable doctrine, is a question of fact for the trier of fact to decide in the first instance. See Appeal of Belair, 158 N.H. 273, 279 (2009). However, we conclude that, on the facts of this case, the issue can be decided as a matter of law.

The Union asserts that "the Town had knowledge of their right not to pay step increases absent a contractual obligation as early as 1993." The Union contends that the Town, by ultimately deciding not to grant step increases "in the face of tumultuous collective bargaining negotiations," "alter[ed] the level playing field" and "gained an economic advantage over the members of [the Union]." Because of these actions, the Union argues that its members were prejudiced by "forever be[ing] artificially retarded in their economic and wage growth."

8

"Laches is an equitable doctrine that bars litigation when a potential plaintiff has slept on his rights." In the Matter of LaRocque & LaRocque, 164 N.H. 148, 151 (2012) (quotation omitted). "Laches, unlike limitation, is not a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced — an inequity founded on some change in the conditions or relations of the . . . parties involved." Appeal of Plantier, 126 N.H. 500, 505 (1985) (quotations omitted). "Because it is an equitable doctrine, laches will constitute a bar to suit only if the delay was unreasonable and prejudicial." Prof. Fire Fighters of Wolfeboro v. Town of Wolfeboro, 164 N.H. 18, 24 (2012). The Union, as the party asserting laches, "bears the burden of proving both that the delay was unreasonable and that prejudice resulted from the delay." Id.

Based upon our holding that the Town was under no obligation to continue paying step increases, we conclude that the Town did not engage in an unreasonable delay in its actions. The Union asserts prejudice in that its members' future wage growth will be restricted by the Town's cessation of the status quo step increases. However, this is not the type of prejudice that laches contemplates. The laches doctrine requires that the prejudice stem from the alleged delay. See Miner v. A & C Tire Co., 146 N.H. 631, 634 (2001) (affirming trial court conclusion that laches did not bar relief, in part, because plaintiff's delay in filing suit did not further prejudice defendants and defendants benefited from delay). Here, assuming that the Union's argument is that the Town unreasonably delayed by not declining to give the step increases in 1993 when it first had knowledge of its ability to do so, the Union has failed to articulate how it was injured by this delay. Rather, it would appear that the Union benefited from receiving the status quo step increases, granted at the Town's discretion, throughout the intervening status quo periods. Thus, we conclude, as a matter of law, that the PELRB could not have found that laches barred the Town from denying the step increases.

D.    Disparate Treatment

In its brief to this court, the Union also asserts that the PELRB erred by failing "to address the properly raised equitable doctrine[] of . . . disparate treatment" but provides no developed argument on this issue. See Appeal of Northern New England Tele. Operations, LLC, 165 N.H. 267, 275 (2013). More importantly, the Union did not raise the issue of disparate treatment in its complaint, did not address it in the hearing before the PELRB, and gave it only cursory, undeveloped treatment in the closing brief that it submitted to the PELRB. Consequently, we decline to hold that the PELRB acted unjustly or unreasonably in failing to address the Union's disparate treatment argument, see Hillsborough County Nursing Home, 166 N.H. at ___.

9

E.    Admission of Evidence by PELRB

Finally, the Union argues that the PELRB exceeded its authority by allowing the Town to present evidence that was not presented to the arbitrator. At the hearing before the PELRB, the Union objected to the Town's submission of the Town's financial records that were made available to voters prior to voting each year.  The Town argued that the exhibits were necessary to establish the public policy consideration underlying its objections to the arbitrator's award because, from the Town's perspective, the issue was not whether the Town had budgeted for the increases, but rather whether the public had been adequately warned and had given its approval to fund those increases.

We need not address this issue because even if it was error for the PELRB to admit the additional evidence, reversal is not warranted inasmuch as the Union was not prejudiced by the error.  Our holding that the Town was not required to pay the status quo step increases is not dependent upon whether the voters approved them with the full knowledge of their terms.  Rather, because the status quo step increases were not the result of collective bargaining, the Town had no obligation to continue paying them, regardless of whether the voters had approved their funding.  See Alton School Dist., 140 N.H. at 310-11; see also Laconia Patrolman Assoc., 164 N.H. at 557. Therefore, the additional evidence was irrelevant to the outcome of this case.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.