Grafton
No. 2014-141

VILLAGE GREEN CONDOMINIUM ASSOCIATION

v.

DAVID A. HODGES & a.

Argued: January 15, 2015
Opinion Issued: March 20, 2015

*Janson & Koppenheffer, LLP*, of Lebanon (*William K. Koppenheffer* on the brief and orally), for the petitioner.

*Cleveland, Waters and Bass, P.A.*, of Concord (*David W. Rayment* and *Mark S. Derby* on the brief, and *Mr. Rayment* orally), for the respondents.

CONBOY, J. In this declaratory judgment proceeding, the respondents, David A. and Jóanne Hodges, appeal an order of the Superior Court (*Vaughan,* J.) ruling that they must contribute to the maintenance and repair of an easement they hold over property owned by the petitioner, Village Green Condominium Association (Village Green). We affirm.

The trial court found, or the record supports, the following facts. Village Green is a residential condominium association that owns real property adjacent to Pleasant Street in Lebanon. The Hodgeses own and, through an affiliated corporate entity, operate three apartment complexes on property

abutting Village Green's property. They hold an easement over Village Green's property that provides access from the apartment complexes to Pleasant Street (easement).

The properties were originally one tract of land owned by the French family. In 1929, the French family divided the property into two tracts with various members of the French family owning each tract. In 1970, a portion of one tract was conveyed to R. Bill Purcell. In 1975, Purcell conveyed most of that property to S.M. Development Corporation. Later that year, S.M. Development Corporation conveyed the property to Village Green.

In 1974, a portion of the second tract was conveyed to the Hodges Development Corporation. Later that year, Purcell conveyed the easement to the Hodges Development Corporation by a quitclaim deed (easement deed). The easement is over the portion of the parcel Purcell later conveyed to S.M. Development Corporation. The pertinent language in the easement deed described the easement as follows:

> A certain right of way 20 feet in width, for vehicular and pedestrian travel, leading from Pleasant Street in the Village of West Lebanon, City of Lebanon, County of Grafton and State of New Hampshire, to the premises described in the deed . . . dated October 15, 1929, recorded in the Grafton County Registry of Deeds, Book 621, Page 36, and being the same right of way as set forth in said deed. . . . *The said Hodges Development Corporation shall have the right to improve said road and maintain the same,* but the said R. Bill Purcell reserves the right for himself, his heirs and assigns, to use said right of way in common with Hodges Development Corporation, its successors and assigns.

(Emphasis added.) In 1975, the Hodges Development Corporation divided the property and conveyed to the Hodgeses two parcels, which included the easement. The relevant users of the easement are the tenants of Village Green and the tenants of the apartment complexes owned by the Hodgeses.

On October 27, 2011, Village Green brought this action, seeking a declaration that the Hodgeses are required "to pay their pro rata share of the costs of maintaining and repairing the easement." It contended that "[t]he easement is in need of approximately $52,000 worth of repaving" and that, as the easement holders, the Hodgeses are required to contribute their pro rata share of the costs of such maintenance and repair.

The Hodgeses objected, arguing that the plain language of the easement deed "addressed the issue of maintenance and improvement of the right of way" and "gave [them] the affirmative right, but not the corresponding obligation, to improve and maintain the right of way." They further maintained that Village Green's claim is barred by waiver and laches.

Finally, they argued that, because Village Green *"never* made any demand upon [them] to contribute to the cost of the maintenance and improvement of the right of way," and because they "did nothing to maintain, repair or improve the easement," the course of dealing of the parties was such that they are under no obligation to contribute to the easement's maintenance and repair.

The trial court bifurcated the proceeding, first hearing evidence on whether the Hodgeses are required to contribute to the repair and maintenance of the easement. If the trial court determined that they are, then a second hearing would be scheduled to determine the nature and extent of the contribution. Following the first part of the bifurcated trial, the court ruled that the Hodgeses are required to contribute to the maintenance and repair costs of the easement. The court found that the easement deed grants the Hodgeses the right to maintain the easement, but "is silent with respect to any affirmative obligations." The court concluded that, because both the Hodgeses and Village Green use the easement, they must share in the cost of its maintenance and repair. The court further found that Village Green's claim is not barred by waiver, laches, or the parties' course of dealing.

Following the trial court's ruling, the parties entered into a settlement agreement regarding the nature and extent of the Hodgeses' contribution obligation. In the agreement, the parties acknowledged that the Hodgeses intended to appeal the trial court's ruling as to their obligation to contribute to easement maintenance and repair, and established an agreed-upon procedure for determining the past and future maintenance obligations should we affirm the trial court's ruling. This appeal followed.

## I. *Obligation to Maintain and Repair the Easement*

The Hodgeses first argue that they should not be liable for the costs of maintenance and repair because, although the easement deed grants them the right to maintain the easement, no language in the deed obligates them to do so. "The interpretation of a deeded right of way is ultimately a question of law for this court to decide . . . ." *Gill v. Gerrato*, 154 N.H. 36, 39 (2006) (quotation omitted). In interpreting a deed, we give it the meaning intended by the parties at the time they wrote it, taking into account the surrounding circumstances at that time. *Thurston Enterprises, Inc. v. Baldi*, 128 N.H. 760, 765 (1986). Clear and unambiguous terms of a deed control how we construe the parties' intent, but the law may imply supplemental rights. *Dumont v. Town of Wolfeboro*, 137 N.H. 1, 5 (1993). The overriding principle defining the parties' proper exercise of their rights is the rule of reason, which gives "detailed definition to rights created by

general words either actually used in the deed or, whose existence is implied by law." *Id.* at 5-6 (quotations omitted).

In this case, the easement deed provides that "Hodges Development Corporation shall have the right to improve said road and maintain the same." This language clearly provides, and the parties do not dispute, that the Hodgeses have the *right* to improve and maintain the easement. The dispute centers upon the significance of the absence of language in the deed regarding the *obligation* to maintain and repair the easement.

The Hodgeses argue that because the easement deed addresses their right to maintain the easement, but not the obligation to do so, the parties impliedly excluded any obligation requirement and, thus, did not intend for the Hodgeses, as the dominant tenants of the easement, to be obligated to maintain it. Village Green, the owner of the servient estate, counters that because there is no language in the easement deed concerning the Hodgeses' obligation to maintain and repair the easement, we should apply the common law rule, as reflected in the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES.

We begin with an examination of the common law of easements.

> Generally, the dominant tenant of an easement has a right and the duty to maintain an easement so that it can be used for the purpose for which it was granted, so that no unnecessary damage will result to the servient estate from its use, unless otherwise required by the easement or other agreement . . . to the contrary, or unless the easement is jointly utilized, for the same purposes, by the property owner with the benefited parties. It has been said that the extent of the dominant tenement's duty to repair the property subject to the easement is determined by the conveyance.
>
> In the event the conveyance creating an easement is silent or indefinite as to the duty to repair, the inference to be drawn is that such duty as exists is upon the owner of the easement.

28A C.J.S. *Easements* § 226, at 444 (2008) (footnotes omitted); *see also Freeman v. Sorchych*, 245 P.3d 927, 933 (Ariz. Ct. App. 2011); *Quinlan v. Stouffe*, 823 N.E.2d 597, 606 (Ill. App. Ct. 2005); J. W. BRUCE & J. W. ELY, JR., THE LAW OF EASEMENTS AND LICENSES IN LAND § 8:37, at 8-105 to 8-106 (2011); RESTATEMENT OF PROPERTY § 485 comment *b* at 3024 (1944); *cf. Maddock v. Chase*, 94 N.H. 241, 245 (1947) (explaining that "[t]he reason why these owners of dominant estates cannot recover damages, reimbursement, or contribution, for expenses incurred by the dominant owners for

repairs which they claim the servient owner should have incurred is because there is no duty or obligation on the part of the latter to make the repairs").

More recently, the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.13, at 631-32 (2000), further developed this rule:

> Unless the terms of a servitude . . . provide otherwise, duties to repair and maintain the servient estate and the improvements used in the enjoyment of a servitude are as follows:
>
> (1) The beneficiary of an easement . . . has a duty to the holder of the servient estate to repair and maintain the portions of the servient estate and the improvements used in the enjoyment of the servitude that are under the beneficiary's control, to the extent necessary to
>
> > (a) prevent unreasonable interference with the enjoyment of the servient estate, or
> >
> > (b) avoid liability of the servient-estate owner to third parties.
>
> (2) Except as required by § 4.9 [addressing the servient tenant's right to use the servient estate], the holder of the servient estate has no duty to the beneficiary of an easement . . . to repair or maintain the servient estate or the improvements used in the enjoyment of the easement or profit.
>
> (3) Joint use by the servient owner and the servitude beneficiary of improvements used in enjoyment of an easement . . . , or of the servient estate for the purpose authorized by the easement . . . , gives rise to an obligation to contribute jointly to the costs reasonably incurred for repair and maintenance of the portion of the servient estate or improvements used in common.

*See also* 28A C.J.S. *supra* § 226, at 445 ("When joint regular use of the easement is made by both the dominant and servient estates, both estates have the obligation to contribute jointly to the costs of reasonable repairs unless the easement itself indicates otherwise.").

▪ The rule that joint use of an easement by the dominant and servient estates gives rise to the obligation to contribute jointly to the costs reasonably incurred for easement maintenance and repair has been accepted by "[a] respectable body of authority in other jurisdictions." *McDonald v. Bemboom*, 694 S.W.2d 782, 786 (Mo. Ct. App. 1985) (citing cases); *see also Dunellen, LLC v. Getty Properties Corp.*, 567 F.3d 35, 38 (1st Cir. 2009); *Freeman*, 245 P.3d at 934; *Baker v. Hines*, 406 S.W.3d 21, 30

(Ky. Ct. App. 2013). This rule is based upon the principle that, by using the easement, both the dominant and servient estates contribute to its wear and deterioration and, therefore, distribution of the burden of easement maintenance and repair between both estates is equitable and just. *See Beneduci v. Valadares*, 812 A.2d 41, 51 (Conn. App. Ct. 2002); *Bina v. Bina*, 239 N.W. 68, 71 (Iowa 1931); *Janes v. Politis*, 361 N.Y.S.2d 613, 616-17 (Sup. Ct. 1974); *Buck Mountain Owners' Ass'n v. Prestwich*, 308 P.3d 644, 652-53 (Wash. Ct. App. 2013). We agree with this authority, and hold that, absent language in the deed to the contrary, when the dominant and servient estates jointly use an easement, both estates have the obligation to contribute to the costs reasonably incurred for repairs and maintenance. *See Freeman*, 245 P.3d at 935; *Barnard v. Gaumer*, 361 P.2d 778, 781 (Colo. 1961); *Beneduci*, 812 A.2d at 51; *Janes*, 361 N.Y.S.2d at 615.

The Hodgeses contend that this rule does not apply in this case because "the terms of the servitude clearly . . . addressed the issue of maintenance by granting [them] the discretionary right to make repairs and improvements, but omitting a corresponding obligation . . . to pay for repairs and improvements." Relying upon *Rollins v. Schwyhart*, 587 S.W.2d 364 (Mo. Ct. App. 1979), the Hodgeses argue that because the easement deed addresses the *right* to improve and maintain the easement, we should assume that its silence as to any obligation to contribute to the cost of maintenance and repair excludes such an obligation. *Rollins*, however, is distinguishable from this case.

In *Rollins*, the plaintiffs sought "an injunction requiring the defendant to remove [a] gate" that the defendant had placed across a road over which the plaintiffs had a deeded right-of-way that they used to access their property. *Rollins*, 587 S.W.2d at 365-66. The defendant contended that the plaintiffs lost their easement to use the road because they failed to maintain it. *Id.* at 365. The easement agreement granted " 'a right of way 30 feet wide for a roadway,' " and required the "grantees to install and maintain two cattle guards, one at the entrance to the right of way . . . , and another at the north side of the grant." *Id.* at 366. In addition, the grantors reserved an equal right to use the roadway. *Id.* No reference was made in the agreement as to maintenance of the roadway other than the maintenance of the cattle guards. *Id.* The trial court granted the plaintiffs' request for an injunction and the defendant appealed, arguing, in part, that the trial court erred by "not granting a judgment declaring that [the] plaintiffs must share in the maintenance of the roadway." *Id.* at 365.

The Missouri Court of Appeals rejected the defendant's argument that, because the agreement was silent as to the maintenance of the balance of the roadway, "the maintenance should be shared proportionally by the ones using it." *Id.* at 366. Rather, the court found that the agreement covered

"maintenance of a part of the right of way, the cattle guards." *Id.* Applying the principle that "[w]here an agreement expresses one thing of a class, it implies exclusion of all not expressed," the court concluded that, because the only obligation referred to in the agreement pertained to maintenance of the cattle guards, it did "not think additional maintenance [could] be required." *Id.* at 366, 367. Thus, the court held that the trial court did not err in finding that the plaintiffs were not required to maintain the roadway other than to the extent stated in the agreement. *Id.* at 366, 367.

■ Unlike the agreement in *Rollins*, the easement deed in this case contains *no* language regarding the obligation to maintain and repair any part of the easement. Indeed, the Hodgeses admit that "the language of the easement [deed] does not specifically address *obligations* to maintain the easement." Rather, the easement deed refers solely to the Hodgeses' *right* to improve and maintain the easement. Nothing in the language of the deed evinces that, by expressly granting the Hodgeses this right, Purcell intended to relieve them of their common law obligations to repair and maintain the servitude. *See* Bruce & Ely, *supra* § 8:37, at 8-105 to 8-106. We decline to adopt the Hodgeses' interpretation of the easement deed, which contravenes the common law. Accordingly, absent a contrary agreement in the deed regarding the obligation to maintain and repair the easement, we conclude that the trial court did not err in determining that the Hodgeses are required to contribute to the maintenance and repair costs of the easement.

## II. Waiver and Laches

The Hodgeses next argue that Village Green's claim is barred by waiver or laches. We first address waiver.

The Hodgeses contend that "Village Green has exclusively performed maintenance on the [easement] over the last few decades" and has made no demand upon them to contribute to those costs. They maintain that this conduct "could not more clearly indicate [Village Green's] intention to waive" any rights it has to obtain contribution for the easement's maintenance and repair.

■ "A finding of waiver must be based upon an intention expressed in explicit language to forego a right, or upon conduct under the circumstances justifying an inference of a relinquishment of it." *N. Country Envtl. Servs. v. Town of Bethlehem*, 146 N.H. 348, 354 (2001) (quotation omitted). Whether an implied waiver occurred is a question of fact, and we will not overturn the trial court's determination, unless such a finding is clearly erroneous. *Id.*

■ The trial court found that Village Green had not waived its claim for contribution. It stated that "[t]he evidence is clear that" Village Green did not formally seek "assistance for 36 years because the [easement] was not in need of significant repairs prior to 2010." Testimony at trial indicated that, prior to 2010, the yearly cost of maintenance and repair of the easement was between $500 and $1,000, and that Village Green had not previously made efforts to obtain contribution from the Hodgeses because these were only "normal maintenance expense[s]." The testimony further demonstrated that it was not until "the last few years that the road needed to be replaced." In light of this evidence, the trial court's findings that Village Green neither expressed in explicit language its intent to forego contribution for the maintenance and repair of the easement nor conducted itself in such a way as to justify an inference that it relinquished such a right are not clearly erroneous. *See So. Willow Properties v. Burlington Coat Factory of N. H.*, 159 N.H. 494, 500 (2009).

■ The Hodgeses further argue that Village Green's claim is barred by laches because Village Green unreasonably delayed in enforcing any rights it has to contribution and because they were prejudiced by this delay. "Laches is an equitable doctrine that bars litigation when a potential plaintiff has slept on his rights." *Appeal of Prof'l Fire Fighters of Hudson*, 167 N.H. 46, 57 (2014) (quotation omitted). "Laches, unlike limitation, is not a mere matter of time, but is principally a question of the inequity of permitting the claim to be enforced — an inequity founded on some change in the conditions or relations of the parties involved." *Id.* (quotation and ellipsis omitted). "Because it is an equitable doctrine, laches will constitute a bar to suit only if the delay was unreasonable *and* prejudicial." *Id.* (quotation omitted and emphasis added). The trial court has broad discretion in deciding whether the circumstances justify the application of laches; we will not overturn its decision unless it is unsupported by the evidence or erroneous as a matter of law. *In the Matter of LaRocque & LaRocque*, 164 N.H. 148, 151 (2012). The Hodgeses, as the parties asserting laches, bear the burden of proving both that the delay was unreasonable and that prejudice resulted from the delay. *See id.*

■ The trial court determined that the Hodgeses did not satisfy their burden of demonstrating that the delay was unreasonable because "there was no need for significant repairs until 2010, . . . after which [Village Green] promptly requested assistance." Based upon the testimony that Village Green did not seek contribution from the Hodgeses prior to 2010 because any prior maintenance costs were only "normal maintenance expense[s]," and it was not until "the last few years that the road needed to be replaced," we hold that the trial court did not err in concluding that

there was no unreasonable delay. Because we have found that the trial court did not err in determining that there was no unreasonable delay, we need not address the Hodgeses' arguments regarding prejudice. *See Appeal of Prof'l Fire Fighters of Hudson*, 167 N.H. at 57; *cf. Thayer v. Town of Tilton*, 151 N.H. 483, 486 (2004) (reversing trial court's finding that action was barred by laches because there was insufficient evidence to support finding of prejudice).

To the extent that the Hodgeses argue that "Village Green's waiver and laches is underscored" by the fact that it "turned, in the first instance, to the City of Lebanon, and not to [the] Hodges[es]," to pay for the easement maintenance and repair costs, we disagree. At trial, the property manager for Village Green testified that, although one member of Village Green's board of directors had "some communications" with the City of Lebanon regarding maintenance of the easement, "[t]he board never took any formal action to offer or request that the city take it over." He stated that Village Green was simply "exploring the options that were available to [it] at the time." The mere fact that Village Green "explor[ed] the options" prior to bringing its claim against the Hodgeses is insufficient to render the trial court's findings clearly erroneous or unsupported by the evidence. *See N. Country Envtl. Servs.*, 146 N.H. at 354; *Appeal of Prof'l Fire Fighters of Hudson*, 167 N.H. at 57. Thus, we conclude that the trial court did not err in finding that Village Green's claim is not barred by waiver or laches.

*III. Course of Conduct*

Finally, the Hodgeses argue that the trial court erred when it determined that the parties had not established a course of dealing whereby the Hodgeses had the right to maintain the easement, but not the obligation to do so. They contend that Village Green's conduct "from at least 1974 through 2010" was such that they should not be required to contribute to the cost of maintenance and repair of the easement.

"A course of dealing is a sequence of previous conduct between the parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." RESTATEMENT (SECOND) OF CONTRACTS § 223, at 157-58 (1981); *see also In the Matter of LaRue & Bedard*, 156 N.H. 378, 381 (2007) ("It is well established that contractual obligations can be modified by either an express or an implied agreement between the parties."). Whether the parties' course of dealing becomes a part of an agreement is a question of fact for the trial court to determine, and we will not disturb its ruling unless the record contains insufficient evidence to support it. *See Walker v. Percy*, 142 N.H. 345, 349 (1997).

■ Here, the trial court found that "because the [easement] did not require significant repair until 2010," there had "not been a course of dealing about major repairs between the parties." The evidence supports this finding: The testimony established that Village Green did not seek contribution from the Hodgeses prior to 2010 because it was not until "the last few years that the road needed to be replaced." Accordingly, we uphold the trial court's finding that the parties had not established a course of conduct relieving the Hodgeses from any obligation to contribute to the maintenance and repair of the easement.

*Affirmed.*

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.