**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2023-0660, <u>Lyn Spain & a. v. James Bowles & a.</u>, the court on June 24, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The defendants, James Bowles, Deirdra Batchelder, and Steven Batchelder, appeal an order of the Superior Court (<u>Kissinger</u>, J.) ordering them to cease their use of a private road. We affirm.

I.    <u>Background</u>

The following facts are taken from the trial court's order or are supported by the appellate record. The plaintiffs, Lyn Spain and Dean Gullage, purchased property at 30 Millie's Way in Dunbarton in October 2017. The property is identified as Lot F5-2-3 on the amended subdivision plan recorded in the Merrimack County Registry of Deeds. Millie's Way is a private road providing access to the lots in the subdivision and to Einar's Blueberry Trail, a trail off Millie's Way. Through their deed, the plaintiffs joined the "Millie's Way Maintenance Agreement and Association" to which the Millie's Way easement is assigned and to which members contribute an annual fee for plowing, sanding, salting, and leveling of Millie's Way.

The defendants own property in Dunbarton that abuts Millie's Way, but is accessible without the use of Millie's Way. At the back of the defendants' property abutting Millie's Way there is a break in a stone wall. The defendants historically used Millie's Way to access that portion of the property through the opening in the stone wall. The defendants do not have a written document granting them rights to use Millie's Way, nor are they members of the Maintenance Association.

After acquiring their property, the plaintiffs observed Steven Batchelder driving on Millie's Way to access the break in the stone wall. Gullage informed Steven that he was not authorized to use Millie's Way. In 2020, some members of the Maintenance Association sent a letter to Deirdra Batchelder demanding that she cease her use of Millie's Way, which included riding horses on the road as part of her business of boarding and riding horses. Subsequently, Deirdra stopped using Millie's Way for her business but continued accessing Millie's Way to transport large bales of hay to and from storage containers located on the back of the defendants' property. In addition, James Bowles continued using Millie's Way to access the back of the defendants' property, as

did contractors delivering hay, fill, and storage containers through the break in the wall.

In 2021, the plaintiffs contacted the defendants asking that they stop using Millie's Way. The defendants continued to do so, however, including Bowles riding his lawnmower, Deirdra riding a four-wheeler, and Steven driving his vehicle. Thereafter, the plaintiffs brought an action against the defendants for declaratory judgment, injunctive relief, and trespass.

The trial court held a one-day bench trial in July 2023. The defendants contended that the plaintiffs lacked standing to prevent their use of Millie's Way because the deeded easement providing access to the road is assigned to the Maintenance Association. They also contended that they have a legal right to access Millie's Way because they have an easement. The trial court rejected the defendants' standing argument, reasoning that they had not provided legal support, nor was the court aware of any, "for the proposition that when a landowner provides easement rights for a portion of the landowner's property, the easement holder becomes the only individual with the right to exclude others from using that portion." The court also rejected the defendants' claim that they have an easement, finding that they had a license from the previous owners of the plaintiffs' land to access Millie's Way, which terminated when the plaintiffs purchased the lot. Because it determined that the defendants "have no legal right to access Millie's Way," the court ordered them to cease their use of the road. This appeal followed.

II.     Analysis

When reviewing a trial court's decision rendered after a trial on the merits, we will uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. Gaucher v. Waterhouse, 175 N.H. 291, 295 (2022). We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision based upon the same evidence. Id. at 295-96. We defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. Id. at 296. It is within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented. Id. We review the trial court's application of the law to the facts de novo. Id.

The defendants first argue that the trial court erred as a matter of law when it determined that the plaintiffs had standing to bring an action over the use of Millie's Way because "only the Association has standing to prevent the use of Millie's Way to a third party." The defendants assert that because "[e]xclusive control over the use and maintenance of Millie's Way was deeded to the Association which acts by a two-thirds majority Vote" and "a majority of the

members of the Association did not dispute Defendants' right to use Millie's Way for access nor did the Association vote to permit the Plaintiffs to pursue the subject claims on its behalf," the plaintiffs lacked standing to bring an action against the defendants in trespass.

In pertinent part, the Maintenance Agreement provides that it "relates to the improvement and maintenance of the private roadway known as 'Millie's Way' as shown on the amended subdivision Plan #12159, and to the escrow fund established . . . for this purpose." To that end, the parties agree "that an Administrator for the [Maintenance Association] . . . shall be . . . responsible for the maintaining and repairing of . . . Millie's Way . . . so as to keep the roadway in a reasonable condition for vehicular traffic and to provide access to utility lines." We agree with the plaintiffs that the Maintenance Agreement does not address ownership rights in Millie's Way, but, rather, simply "allocate[s] responsibilities among the Association members for maintenance of Millie's Way." See Village Green Condo. Ass'n v. Hodges, 167 N.H. 497, 502 (2015) (explaining that "joint use of an easement by the dominant and servient estates gives rise to the obligation to contribute jointly to the costs reasonably incurred for easement maintenance and repair"). Contrary to the defendants' assertion, the plaintiffs' participation in the Maintenance Agreement does not vitiate their right, as fee owners, to exclude trespassers from using the private road. See Burke v. Pierro, 159 N.H. 504, 510 (2009). Further, the "two thirds vote" provisions, relied on by the defendants as requiring authorization for the plaintiffs' lawsuit, speak only to the processes whereby the parties to the Maintenance Agreement can amend or suspend the responsibilities set forth in that Agreement.

The defendants also argue that the trial court erroneously relied on "the proposition that 'A property owner's right to use the owner's property necessarily includes the right to exclude others from using it,'" because in this case the plaintiffs' "ownership interest does not include all the sticks in the bundle of property rights." Bellevue Props. v. 13 Green St. Props., 174 N.H. 513, 517 (2021). According to the defendants, the plaintiffs "have no authority individually to prohibit access to Millie's Way," as that right lies solely in the Maintenance Association. However, as the defendants expressly acknowledge in their brief, the plaintiffs are "the underlying fee owner of Millie's Way." As such, the trial court found, "the plaintiffs, as the owners of the Spain Property which includes Millie's Way, have the right to sue to exclude the defendants from using Millie's Way." See Carlson, Tr. v. Latvian Lutheran Exile Church of Boston and Vicinity Patrons, 170 N.H. 299, 305 (2017) (concluding that an easement owner lacked standing to bring an action traditionally established to protect possession, such as trespass, when the fee owner was not joined as a party); cf. Low v. Streeter, 66 N.H. 36, 38 (1889) (explaining that "[a] grant of a right of way over land does not convey the soil, or any corporeal interest in it, and it necessarily follows that such an owner cannot prevent even a trespasser

3

from using the land, if his use does not impede the exercise of the right of passage").

Next, the defendants argue that the trial court erred as a matter of law "when it concluded that the defendants did not have an easement to Millie's Way pursuant to the related subdivision approval conditions." (Capitalization and bolding omitted.) They assert that the "clear and unambiguous" minutes of the Dunbarton Planning Board's meeting approving the subdivision "specifically assured the Defendants that they could have a drive[way] off Millie's Way." The trial court rejected the defendants' argument, finding that the planning board's meeting minutes "do not discuss the Bowles family's right to access Millie's Way and the board did not condition approval of the subdivision on access being provided to the Bowles family to use Millie's Way." The record supports the trial court's ruling.

The minutes reflect that at a public hearing on July 19, 1989, regarding a "[p]roposed two lot subdivision on Robert Rogers and Stone Road," when Bowles "asked if the subdivision were passed, would he be allowed to put a driveway in," the board "stated yes." We are not persuaded by the defendants' argument that "the written instrument conveying the subject easement was [the board's] actions as contained in the minutes as they relate to the approval of the subdivision." As the trial court found, "There is no recorded instrument granting the defendants easement access." We find no error in the court's conclusion that as a matter of law the defendants do not have an easement. See Soukup v. Brooks, 159 N.H. 9, 17 (2009) (noting that where an easement plan was recorded and the deed "expressly convey[ed] an easement," a valid easement existed); Close v. Fisette, 146 N.H. 480, 483-84 (2001) (explaining that an easement agreement granting access rights as shown on an easement plan signed by the parties and recorded constituted a valid easement even though the easement plan was not recorded).

We have considered the defendants' remaining arguments and have concluded that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

4