404

Public Employee Labor Relations Board
No. 81-403
Coos
No. 82-003

APPEAL OF INTERNATIONAL ASSOCIATION
OF FIREFIGHTERS, AFL–CIO
Local 1088
(New Hampshire Public Employee Labor Relations Board)

INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS, AFL–CIO

v.

CITY OF BERLIN

June 15, 1983

*Earl F. Gage,* of Berlin, by brief and orally, for the plaintiff.

*Nighswander, Martin, KillKelley & Kidder P.A.,* of Laconia (*Bradley F. Kidder* on the brief and orally), for the defendant.

BOIS, J. These are consolidated appeals from decisions of the Superior Court (*Dunfey,* C.J.) and the Public Employee Labor Relations Board (PELRB). The plaintiff, International Association of Firefighters, AFL–CIO Local 1088, seeks to overturn the decisions below, both of which related to the union's contract with the defendant City of Berlin. We affirm both decisions.

On August 22, 1979, after several months of collective bargaining, the City of Berlin and the firefighters' union executed a "working agreement." The agreement recognized the union as the exclusive representative of the employees of the Berlin Fire Department and contained numerous provisions concerning working conditions and grievance procedures. The agreement was to remain in effect until August 31, 1981, and thereafter from year to year until terminated.

During the 1981 fiscal year, which ran from July 1, 1980 to June 30, 1981, the city encountered serious budgetary constraints. As of December 31, 1980, the halfway point of the fiscal year, the fire department had expended nearly ninety-five percent of the funds appropriated for overtime work in that fiscal year. In order to avoid exceeding its budgetary allowance, the city, in January 1981, began to cut back on overtime work by limiting the employees' vacation choices, decreasing the number of firefighters in certain platoons, and requiring employees in the electrical division to work straight time as "untrained" firefighters.

The union contested these practices, alleging that they violated the express provisions of the working agreement, which was then in effect. Grievances were filed pursuant to the contract, and a hearing was held before an arbitrator agreed upon by both sides. In April 1981, the arbitrator found that most of the newly implemented practices violated the working agreement, and he established remedies intended to prevent further violations. Dissatisfied with certain unfavorable rulings as well as with the remedial provisions, the union appealed to the PELRB. The board, however, interpreted the working agreement as rendering all arbitration awards final and binding upon the parties, and it therefore refused to review the challenged rulings. This decision forms the basis of one of the issues now before us.

In addition to implementing the above-mentioned austerity measures during the first part of 1981, the city notified the union in writing on March 24, 1981, that it did not wish to renew the existing working agreement after its expiration on August 31, 1981. During negotiations on a new agreement, the city also indicated that as of August 31, 1981, it would reduce the number of firefighters in each platoon from six men to five. The parties negotiated throughout the spring and summer of 1981, but were unable to reach a new agreement. On August 20, 1981, the city informed all fire department employees that it would maintain the existing levels of pay and benefits if the parties failed to reach an agreement prior to September 1, 1981.

The union challenged the city's decision to terminate the contract and obtained an ex parte temporary injunction in superior court against such action, pending a hearing before the PELRB. In the subsequent administrative proceeding, the union focused its argument upon the planned change in platoon size. It claimed that platoon staffing was a mandatory subject of collective bargaining and that the city could not unilaterally alter platoon sizes. The union also argued that the city's March 24, 1981, notice of intent to terminate was invalid because the parties' contract allegedly prohibited such

notice from being served more than thirty days before termination. Finally, the union argued that the city had negotiated in bad faith.

The PELRB found that the manning of platoons was a management prerogative under RSA 273-A:1, XI; therefore, it rejected the union's primary assertion that platoon size was a mandatory subject of negotiation. Without express rulings, the board also rejected the union's claims regarding the allegedly invalid notice and bad faith bargaining.

Notwithstanding the adverse decision of the PELRB, the union requested the superior court to continue the outstanding temporary injunction until the case could be heard on appeal to this court. After further proceedings, the superior court ruled, consistent with the PELRB's decision, that the city's notice of intent to terminate was valid and that platoon size was a management prerogative. The court found that the union did not face imminent irreparable harm and, therefore, dissolved the outstanding injunction.

 In the instant appeals, the union first argues that both the PELRB and the superior court erred in finding the city's March 24, 1981, termination notice valid. The parties' working agreement stated that the contract could be terminated at the end of the contractual year "by notice in writing by one party served thirty (30) days prior thereto upon the other party." The union asserts that this provision mandated that notice of termination be served *exactly* thirty days before termination; that is, only on August 1, 1981. We are not persuaded by this unrealistic argument. The thirty-day service requirement was intended to protect the interests of the parties by requiring advance notice and minimizing unfair surprise. We interpret the contractual provision as permitting service of notice at any time prior to thirty days before termination. Accordingly, the city's notice, which was served some 150 days before termination, satisfied the contractual requirements.

The union next challenges the respective rulings of the PELRB and superior court that platoon size was a subject falling solely within management discretion. The union claims that a reduction in platoon size directly affects the health and safety of firefighters and, as such, is a "term and condition of employment" upon which the city is obligated to bargain under RSA chapter 273-A. *See* RSA 273-A:1, XI; RSA 273-A:3, I.

RSA 273-A:1, XI states that:

> " 'Terms and conditions of employment' means wages, hours and other conditions of employment other than managerial policy within the exclusive prerogative of the public employer, or confided exclusively to the public

employer by statute or regulations adopted pursuant to statute. *The phrase 'managerial policy within the exclusive prerogative of the public employer' shall be construed to include* but shall not be limited to the functions, programs and methods of the public employer, including the use of technology, the public employer's organizational structure, and the selection, direction and *number of its personnel,* so as to continue public control of governmental functions."

(Emphasis added.)

■■ The PELRB is vested with authority to define and interpret the terms of the collective bargaining statute (RSA chapter 273-A) in the first instance, *Appeal of City of Concord,* 123 N.H. 256, 257, 459 A.2d 285, 286 (1983), and with discretion to interpret "managerial policy within the exclusive prerogative of the public employer." *Appeal of Watson,* 122 N.H. 664, 666–67, 448 A.2d 417, 419 (1982); *Appeal of State Employees' Ass'n,* 120 N.H. 690, 694, 422 A.2d 1301, 1304 (1980). In order to prevail on appeal, the moving party must show that the PELRB's interpretation of the managerial policy exception was erroneous as a matter of law, or that it was unjust or unreasonable. *Appeal of City of Concord,* 123 N.H. at 257, 459 A.2d at 286; *Appeal of Watson,* 122 N.H. at 667, 448 A.2d at 419; RSA 541:13.

■ RSA 273-A:1, XI expressly provides that the number of personnel of a public employer falls within the exclusive prerogative of the employer. The stated rationale for this prerogative is to continue public control of governmental functions. In this case, the city's cutback in platoon staffing essentially involved the number of its personnel and related directly to the city's need to stay within the budget established by its public officials. For this reason, we hold that the PELRB's decision was neither erroneous as a matter of law, nor unjust or unreasonable.

■■ The union further argues that the city's actions, specifically its unilateral termination of the 1979–81 working agreement and its refusal to negotiate on the change in platoon size planned after September 1, 1981, constituted bad faith bargaining, an unfair labor practice under RSA 273-A:5, I(e). The language of the working agreement, however, clearly reveals that either party was entitled to terminate the contract unilaterally if adequate notice was given. The superior court correctly made such a finding. Additionally, because platoon size was only a permissive subject of negotiation, the city could properly have refused to bargain on that subject.

The evidence before the PELRB showed that the city had participated in numerous negotiation sessions, had made offers and counteroffers, and had agreed to continue all existing wage and benefit levels after the expiration of the working agreement. We conclude that the evidence supported the board's finding that the city acted in good faith. Accordingly, we reject the union's request for reimbursement of its legal expenses pursuant to our decision in *Harkeem v. Adams*, 117 N.H. 687, 691, 377 A.2d 617, 619 (1977).

The union's final assignment of error relates to the PELRB's refusal to review the April 1981 arbitrator's awards. As we mentioned above, the board ruled that the awards were final and binding upon the parties, and not subject to administrative or judicial review. The union argues that the board had the authority to review, and should have reviewed, the arbitrator's findings because they contained plain errors of law and fact on their face. We disagree.

The statute governing arbitration, RSA chapter 542, permits judicial review of an employment-related arbitration award, *see* RSA 542:8, only when the parties' arbitration agreement "specifically provides that it shall be subject to the provisions of [the] chapter." RSA 542:1; *see Southwestern Trans. Co. v. Durham*, 102 N.H. 169, 173, 152 A.2d 596, 599 (1959). The working agreement in this case made no reference to RSA chapter 542 and did not provide for an appeal to the PELRB. To the contrary, the agreement expressly stated that the arbitrator's decision was to be binding upon both the union and the city. As a consequence, we hold that the PELRB correctly ruled that the arbitrator's decision was not subject to review.

*Affirmed.*

All concurred.