Public Employee Labor Relations Board
No. 82-348

## APPEAL OF BERLIN EDUCATION ASSOCIATION, NHEA/NEA
## (New Hampshire Public Employee Labor Relations Board)

December 31, 1984

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester, and *James Allmendinger*, of Concord (*Jack B. Middleton* and *Mr. Allmendinger* on the brief, and *Mr. Allmendinger* orally), for Berlin Education Association, NHEA/NEA.

*Nighswander, Martin, Kidder & Mitchell P.A.*, of Laconia (*Bradley F. Kidder* and *Patrick H. Wood* on the brief, and *Mr. Kidder* orally), for the Berlin School Board.

DOUGLAS, J.   The sole issue in this appeal is whether the New Hampshire Public Employee Labor Relations Board (PELRB) erred in finding that the Berlin Board of Education did not commit an unfair labor practice in refusing to negotiate a salary scale for extracurricular positions. Because we hold that under RSA chapter 273-A compensation for extracurricular duties is a mandatory subject of bargaining, we conclude that the PELRB erred, and we reverse.

Berlin Education Association, NHEA/NEA (BEA) is the exclusive bargaining representative of all permanent full-time teachers employed by the Berlin public schools. In 1980, the BEA entered into negotiations with the Berlin Board of Education (board) in which it sought to negotiate, among other items, a salary scale for its members who hold extracurricular positions. The board refused to negotiate such a pay scale, maintaining that the matter was nonnegotiable and was subject to the sole determination of the board. On June 10, 1980, the BEA filed an unfair labor practice charge with the PELRB, alleging that the board had refused to negotiate certain cost items. The BEA asked the PELRB to order the board to negotiate extracurricular salaries.

A hearing was held, and on December 3, 1981, the hearings officer dismissed the unfair labor practice charge, ruling that "under the language of the existing agreement, the subject is not [a] mandatory" subject of negotiations. The BEA appealed the ruling. After a hearing before the full PELRB, the PELRB ruled that "[t]he extra curricula [sic] duties are not contained in Article I, 'Recognition', [sic] therefore, under the contract the subject of extra curricula [sic] payments is a permissive subject of negotiations, but is not mandatory." The PELRB denied the BEA's motion to reconsider. The BEA then appealed to this court pursuant to RSA chapter 541.

The BEA seeks to negotiate wages for extracurricular duties such as coaching and supervising student activities. "Extracurricular activities are activities generally outside of regular hours of pupil attendance at which a teacher's attendance is either required or voluntary and which may or may not involve additional pay." *West Hartford Education Assn., Inc. v. DeCourcy*, 162 Conn. 566, 586. 295 A.2d 526, 537 (1972). The record indicates that, in the Berlin school system, performance of extracurricular duties is voluntary on the part of the teacher. Teachers are not assigned or required to take on extracurricular duties. The extracurricular positions are salaried positions.

The record establishes that the board does not require persons filling extracurricular positions to be certified by the State Board of Education, and not all persons performing extracurricular duties in the Berlin school system are teachers within the BEA bargaining unit. The PELRB found, however, that although the superintendent can fill extracurricular positions outside of the bargaining unit, "that has not been the practice."

The BEA states that persons outside the bargaining unit may fill extracurricular positions and that it does not seek to negotiate wages on behalf of these persons. Rather, the BEA contends that, as the exclusive bargaining representative of the teachers, it is entitled to negotiate wages for its members performing extracurricular duties. On appeal, the BEA argues that the collective bargaining agreement expressly requires the board to negotiate with respect to terms and conditions of employment as defined in RSA chapter 273-A, and that under RSA chapter 273-A, compensation for extracurricular duties is a mandatory subject of bargaining.

The board argues that extracurricular duties are not within the scope of the collective bargaining agreement. In support of its position, the board maintains that the extracurricular duties are dissimilar and distinct from the duties of full-time teachers, are outside the community of interest of full-time teachers and are not part of the job description of teachers under the collective bargaining agreement. Consequently, the board argues that a salary scale for extracurricular positions is not a mandatory subject of bargaining between the board and the BEA.

That the collective bargaining agreement at issue does not *expressly* address the subject of extracurricular activities does not end the matter for us. There is general agreement that "extracurricular activities are a fundamental part of a child's education, making the supervision of such activities an integral part of a teacher's duty toward his or her students." *Bd. of Ed. Asbury Pk. v. Asbury*

*Pk. Ed. Assn.*, 145 N.J. Super. 495, 501, 368 A.2d 396, 399 (1976). *E.g., McGrath v. Burkhard*, 131 Cal. App. 2d 367, 376, 280 P.2d 864, 870 (1955); *District 300 Educ. Ass'n v. Board of Educ.*, 31 Ill. App. 3d 550, 554–55, 334 N.E.2d 165, 168 (1975); *Parrish v. Moss*, 106 N.Y.S.2d 577, 584–85, *aff'd*, 107 N.Y.S. 2d 580 (1951); *Pease v. Millcreek Twp. Sch. Dist.*, 412 Pa. 378, 385–88, 195 A.2d 104, 107–08 (1963).

Teaching is not limited to classroom instruction, but also involves the complete training of a child for citizenship and leadership. Extracurricular activities can be a significant part of that training. To hold that extracurricular activities are dissimilar, distinct and outside the community of interest of teachers would be to limit a teacher's role in a child's education merely to classroom instruction. Consequently, we conclude that extracurricular activities are within the scope of a teacher's duties.

Turning to the collective bargaining agreement in the case before us, we note that it expressly includes matters which are mandatory subjects of bargaining under RSA chapter 273-A. In Article I, entitled "Recognition," the contract provides: "The Board recognizes the Association as the exclusive representative of all permanent full time teachers employed by the Berlin Public Schools *for the purpose of negotiating with the Board with respect to terms and conditions of employment as defined in RSA 273-A.*" (Emphasis added.) The issue, then, is whether a salary scale for teachers filling extracurricular positions is a mandatory subject of bargaining under RSA chapter 273-A.

RSA 273-A:3, I, requires a public employer and the exclusive bargaining representative of a bargaining unit to negotiate in good faith in an effort to reach an agreement on the terms of employment. RSA 273-A:1, XI defines terms and conditions of employment to mean "wages, hours and other conditions of employment." There are only two exceptions to a public employer's obligation to bargain wages, hours and other conditions of employment. *State Employees' Ass'n v. N.H. PELRB*, 118 N.H. 885, 886, 397 A.2d 1035, 1036 (1978). First, there is the managerial policy exception contained in RSA 273-A:1, XI, which the board claims is applicable to the case at bar. Second, there is the merit system exception found in RSA 273-A:3, III, which is not at issue here.

Under the managerial policy exception, public employers need not negotiate "functions, programs and methods of the public employer, including the use of technology, the public employer's organizational structure, and the selection, direction and number of its personnel . . . . " RSA 273-A:1, XI. The exception "excludes broad

policy matters from negotiation." *Appeal of Watson,* 122 N.H. 664, 667, 448 A.2d 417, 419 (1982).

The duty to bargain arises either under the collective bargaining agreement or by statute. In the instant case, the PELRB ruled that a salary scale for extracurricular positions was not a mandatory subject of negotiations. The PELRB based its conclusion on its determination that the subject was not covered under the collective bargaining agreement. Although the PELRB made no express ruling concerning the obligation to bargain under RSA chapter 273-A, its conclusion that the proposal was not a mandatory subject of negotiations also presupposes the conclusion that the matter was one of managerial policy and therefore not a mandatory subject of negotiation under RSA chapter 273-A.

It is well settled that the PELRB has been vested with authority to define initially the terms of RSA chapter 273-A. *Appeal of Town of Pelham,* 124 N.H. 131, 134, 469 A.2d 1295, 1297 (1983). Implicit in this authority is the PELRB's responsibility to determine which proposals are mandatory subjects of bargaining under RSA chapter 273-A and which proposals are managerial policy within the exclusive prerogative of the employer. *See Appeal of Watson,* 122 N.H. 664, 666–68, 448 A.2d 417, 419–20 (1982). We will not disturb the PELRB's ruling unless the appealing party satisfies its burden of showing that the PELRB's determination was erroneous as a matter of law, unjust or unreasonable. *Appeal of Internat'l Assoc. of Firefighters,* 123 N.H. 404, 408, 462 A.2d 98, 101 (1983).

In this case, however, we agree with the BEA that the proposal at issue is a mandatory subject of negotiations under RSA chapter 273-A. Wages are a mandatory subject of bargaining. *Appeal of State Employees' Ass'n,* 120 N.H. 690, 692, 422 A.2d 1301, 1302 (1980). While the statute does not define the term "wages," we have consistently held that "'[w]here the language of a statute is plain and unambiguous, the statute must be given effect according to its plain and obvious meaning.'" *Appeal of Keene State College Educ. Ass'n,* 120 N.H. 32, 35, 411 A.2d 156, 159 (1980) (quoting *Ahern v. Laconia Country Club, Inc.,* 118 N.H. 623, 624, 392 A.2d 587, 588 (1978)). Wages are "monetary remuneration by an employer . . . for labor or services . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2568 (1961); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1440 (1981) (wages defined as payment for services).

"[C]ourts have rather consistently held that such items as overtime pay, extra duty pay, vacation and holiday pay, bonus or

784

merit pay, severance pay, shift differentials, and pensions are mandatory subjects of bargaining encompassed within the term 'wages.'" Clark, *The Scope of the Duty to Bargain in Public Employment*, in LABOR RELATIONS LAW IN THE PUBLIC SECTOR, at 88 (A. Knapp ed. 1977) (footnotes omitted); *see State Empl. Ass'n v. Board of Trustees*, 118 N.H. 466, 467–68, 388 A.2d 203, 204–05 (1978) (shift change does not constitute managerial policy). Likewise, compensation for extracurricular activities, which is remuneration for services constituting an integral part of a teacher's duties, is within the term "wages" and is therefore a mandatory subject of bargaining. *See Canon-McMillan S. B. v. Commonwealth*, 12 Pa. Commw. 323, 327, 316 A.2d 114, 116 (1974) (compensation for extracurricular activities is issue of wages and necessarily is mandatory subject of bargaining). *West Hartford Education Assn., Inc. v. DeCourcy*, 162 Conn. 566, 586–87, 295 A.2d 526, 537 (1972) (the question of compensation for extracurricular activities affects salaries and to that extent is mandatory subject of negotiation).

It is important to note that this case involves only the issue of *wages* for extracurricular duties. It does not affect the board's authority to decide whether to *offer* extracurricular programs or to consider the number of such programs. These latter issues clearly are matters of managerial policy within the exclusive prerogative of the board.

Because we find that the PELRB erred as a matter of law in finding that a salary scale for extracurricular duties is not a mandatory subject of bargaining, we reverse and remand for an order consistent with this opinion.

*Reversed and remanded.*

All concurred.