NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Public Employee Labor Relations Board
No. 2017-0115


APPEAL OF STATE EMPLOYEES' ASSOCIATION/SERVICE EMPLOYEES'
INTERNATIONAL UNION, LOCAL 1984
(New Hampshire Public Employee Labor Relations Board)

Argued:  November 9, 2017
Opinion Issued: April 25, 2018


Milner & Krupski, PLLC, of Concord (John S. Krupski on the brief and orally), for the petitioner.


Morgan, Brown & Joy, LLP, of Boston, Massachusetts (Jeffrey S. Siegel on the brief, and Joseph P. McConnell orally), for the respondent.


HICKS, J.  The petitioner, the State Employees' Association of New Hampshire/Service Employees' International Union, Local 1984 (Union) appeals an order of the New Hampshire Public Employee Labor Relations Board (PELRB) dismissing its unfair labor practice complaint against the respondent, the Community College System of New Hampshire (CCSNH).  The Union argues that the PELRB erred in ruling that CCSNH was not obligated to: (1) bargain over wages for on-campus tutoring services performed by adjunct faculty; and (2) compensate an adjunct faculty member for lost tutoring income resulting

from his participation in collective bargaining negotiations.  We reverse and remand.

I

The record supports the following facts.  The Union is the exclusive bargaining representative of adjunct faculty "who are employed by CCSNH and who have taught at least five semesters in the last five years or who have currently begun their fifth semester of teaching and have taught four semesters within the last five years."  The most recent collective bargaining agreement (CBA) between the parties covered the period from September 25, 2013, through June 30, 2016.  The CBA classifies adjunct faculty as "part-time" employees and delineates that they are responsible for teaching specific assigned courses and making themselves available for student consultation "before or after class, or by appointment."  CCSNH also hires adjunct faculty from the bargaining unit — along with full-time faculty and, occasionally, students — to provide tutoring services to its student body at the Academic Center for Excellence (ACE).  This includes Rick Watrous, who has taught English at CCSNH as an adjunct professor since the 1990s, tutored students at ACE since 2010, and currently serves as a member of the Union's bargaining team.

The CBA does not address the subject of tutoring generally, or compensation for tutoring specifically.  Accordingly, while negotiating a successor agreement in 2016, the Union sought to bargain over tutoring wages paid to adjunct faculty bargaining unit members.  See RSA 273-A:3, I (2010) (requiring a public employer and a bargaining unit representative to negotiate in good faith over the "terms of employment").  CCSNH, however, refused, maintaining that tutoring was not "bargaining unit work" — i.e., tutoring is not among the duties adjunct faculty are hired to perform.  For the same reason, CCSNH refused to reimburse Watrous for ACE tutoring hours he forewent to attend collective bargaining negotiations.  See RSA 273-A:11, II (2010) (requiring public employers to meet with a bargaining unit's representatives "during working hours without loss of compensation or benefits").

As a result, the Union filed an unfair labor practice complaint with the PELRB, alleging that CCSNH had violated its bargaining obligations under RSA chapter 273-A.  Following an adjudicatory hearing, a three-member panel of the PELRB issued an order dismissing the complaint in its entirety.  In its order, the panel, construing our decision in Appeal of Berlin Education Association, 125 N.H. 779, 780-84 (1984), maintained that "public employers like CCSNH are only obligated to bargain over wages paid for the performance of bargaining unit work."  Unanimously agreeing that tutoring did not fall within the scope of the adjunct faculty's "bargaining unit work," the panel found that CCSNH was not obligated to bargain over wages for these services.

2

In turn, by a two-to-one decision, the panel determined that, because tutoring was outside the scope of the bargaining unit's work, CCSNH also did not commit an unfair labor practice when it refused to reimburse Watrous for his lost income. This appeal followed.

II

"RSA chapter 541 governs our review of PELRB decisions." Appeal of Prof'l Fire Fighters of Hudson, 167 N.H. 46, 51 (2014); see RSA 273-A:14 (2010); RSA 541:2 (2007). "Pursuant to RSA 541:13 (2007), we will not set aside the PELRB's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable." Prof'l Fire Fighters of Hudson, 167 N.H. at 51. "The PELRB's findings of fact are presumed prima facie lawful and reasonable." Id.; see also RSA 541:13. "In reviewing the PELRB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record." Prof'l Fire Fighters of Hudson, 167 N.H. at 51. "We review the PELRB's rulings on issues of law de novo." Id.

A

The Union first challenges the PELRB's determination that CCSNH is not obligated to bargain over compensation paid to adjunct faculty bargaining unit members for ACE tutoring.

The Public Employee Labor Relations Act obligates public employers and employee organizations to negotiate in good faith over the terms and conditions of employment. RSA 273-A:3 (2010). The Act defines "terms and conditions of employment," in relevant part, as "wages, hours, and other conditions of employment." RSA 273-A:1, XI (2010). Wages paid to members of a bargaining unit, therefore, constitute a mandatory subject of negotiations between public employers and employee organizations. Berlin, 125 N.H. at 783.

That the foregoing is well-established is not questioned by CCSNH. According to CCSNH, however, "first and foremost" it must be determined whether the work being performed is "bargaining unit work." This is because, CCSNH reasons, our decision in Berlin dictates that it is only those wages paid for the performance of "bargaining unit work" that must be negotiated. Maintaining that the PELRB properly recognized this distinction, CCSNH argues that we should defer to its findings that tutoring is not part of the adjunct faculty's "bargaining unit work" and, thus, wages paid for such services need not be negotiated.

3

In Berlin, we were called upon to determine whether a school board was obligated to negotiate with teachers over a salary scale for performance of extracurricular duties. Id. at 780. Thus, our decision rested upon the subject matter that the teachers sought to negotiate — a salary scale. Id. at 783-84.

Because the Act did not define the statutory term, we ascribed to the term "wages" its plain and obvious meaning of "monetary remuneration by an employer for labor or services." Id. at 783 (quotation and ellipses omitted). We also recognized that other courts had "rather consistently held that such items as overtime pay, extra duty pay, vacation and holiday pay, bonus or merit pay, severance pay, shift differentials, and pensions are mandatory subjects of bargaining encompassed within the term 'wages.'" Id. at 783-84 (quotation omitted). Given this expansive definition, it followed that the salary scale sought to be negotiated fell within the term "wages" and, thus, was a mandatory subject of bargaining. Id. at 784. We also concluded contrary to the school board's primary argument, but consistent with a number of other jurisdictions, "that extracurricular activities are within the scope of a teacher's duties" — or constitute "bargaining unit work" as CCSNH terms it. Id. at 782.

We need not consider whether Berlin should be interpreted to require that bargaining is mandatory any time the topic at issue concerns wages paid or to be paid to the employee by the employer, or whether, in addition to concerning wages, the subject matter must be work that is closely related to, or "within the scope" of, the employees' duties that are already the subject of bargaining. Even if we construe that case in the latter fashion, as CCSNH advocates, we conclude that the tutoring services at issue here are, if anything, more closely related to the normal adjunct faculty members' duties than the extracurricular activities in Berlin were related to the teachers' regular duties. Thus, the result reached in Berlin applies a fortiori to control the outcome here. Either way, the PELRB erred as a matter of law.

B

The Union next challenges the PELRB's consequent conclusion that, because tutoring was not "bargaining unit work," CCSNH did not commit an unfair labor practice when it refused to compensate Watrous for ACE tutoring hours he forewent to participate in collective bargaining negotiations.

RSA 273-A:11 (2010) requires a public employer to extend certain rights to the exclusive representative of a bargaining unit, in this case the Union, including the following: "A reasonable number of employees who act as representatives of the bargaining unit shall be given a reasonable opportunity to meet with the employer or his representatives during working hours without loss of compensation or benefits." RSA 273-A:11, II. Interpreting "without loss of compensation or benefits," id., to encompass only lost compensation or

4

benefits deriving from "bargaining unit work," the PELRB concluded that Watrous was not entitled to reimbursement.

Although the PELRB's findings of fact are presumptively lawful and reasonable and will not be disturbed if supported by the record, we are the final arbiters of legislative intent as expressed in the words of a statute considered as a whole and will set aside erroneous rulings of law. See Appeal of Laconia Patrolman Assoc., 164 N.H. 552, 555 (2013). "We do not look beyond the language of a statute to determine legislative intent if the language is clear and unambiguous." Appeal of Town of Deerfield, 162 N.H. 601, 603 (2011).

Nor, when engaging in statutory interpretation, will we "consider what the legislature might have said or add language that the legislature did not see fit to include." Laconia Patrolman Assoc., 164 N.H. at 555. Yet, as the Union asserts, that is exactly what the PELRB's interpretation of RSA 273-A:11 would require us to do. The term "bargaining unit work" is simply not found in the statutory provision.

Because the plain language of RSA 273-A:11, II obligates CCSNH to afford "[a] reasonable number of employees who act as representatives of the bargaining unit . . . a reasonable opportunity to meet" for collective bargaining negotiations "during working hours without loss of compensation or benefits," we agree with the Union that CCSNH must compensate Watrous for the ACE tutoring hours he missed while attending such negotiations. We conclude, therefore, that the PELRB erred as a matter of law with regard to this finding as well and remand for proceedings consistent with this opinion.

Reversed and remanded.

LYNN, C.J., and BASSETT, J., concurred; DALIANIS, C.J., retired, specially assigned under RSA 490:3, concurred; HANTZ MARCONI, J., concurred in part and dissented in part.

HANTZ MARCONI, J., concurring in part and dissenting in part. I concur in Section IIB of the majority's opinion regarding the correct interpretation of RSA 273-A:11, II (2010). I disagree, however, with the majority's conclusion in Section IIA that "the PELRB erred as a matter of law" when it conducted the inquiry set forth in Appeal of Berlin Education Association, 125 N.H. 779 (1984), and determined that the tutoring services at issue do not fall within the scope of an adjunct professor's duties. In reaching this conclusion, the majority fails to adhere to the standard of review established by RSA 541:13 (2007). Because this standard of review dictates that we affirm the PELRB's determination on this issue, I respectfully dissent.

The PELRB concluded, and the parties agree, that <u>Berlin</u> is controlling precedent with respect to the first issue, which is whether CCSNH is obligated to bargain over compensation for tutoring services performed by members of the adjunct faculty bargaining unit. As the majority's opinion correctly notes, in <u>Berlin</u>, "we were called upon to determine whether a school board was obligated to negotiate with teachers over a salary scale for performance of extracurricular duties." <u>See</u> <u>Berlin</u>, 125 N.H. at 780. In that case, the union that represented "all permanent full-time teachers employed by the Berlin public schools" sought to negotiate a salary scale for bargaining unit members who performed "extracurricular duties such as coaching and supervising student activities." <u>Id</u>. at 780-81. When the school board refused, the union "filed an unfair labor practice charge with the PERLB," which ruled in favor of the school board. <u>Id</u>. at 780.

On appeal, we first considered whether the extracurricular duties at issue in <u>Berlin</u> were "within the scope of a teacher's duties." <u>Id</u>. at 782. We defined activities constituting "an integral part of" an employee's duties as falling "within the scope of" those duties. <u>Id</u>. at 781-82 (quotation omitted). We then concluded that the extracurricular duties at issue were an integral part of a teacher's duties. <u>Id</u>. We reasoned:

> There is general agreement that extracurricular activities are a fundamental part of a child's education, making the supervision of such activities an integral part of a teacher's duty toward his or her students.
>    Teaching is not limited to classroom instruction, but also involves the complete training of a child for citizenship and leadership. Extracurricular activities can be a significant part of that training. To hold[, as the school board suggests,] that extracurricular activities are dissimilar, distinct and outside the community of interest of teachers would be to limit a teacher's role in a child's education merely to classroom instruction. Consequently, we conclude that extracurricular activities are within the scope of a teacher's duties.

<u>Id</u>. (quotation and citations omitted). Based upon that conclusion, we held that compensation for teachers who performed these extracurricular duties constituted "wages" under RSA chapter 273-A and, therefore, this compensation was "a mandatory subject of bargaining." <u>Id</u>. at 783-84 (quotation omitted); <u>see</u> <u>id</u>. at 782 (noting that RSA chapter 273-A requires public employer and union to negotiate in good faith over "terms of employment" and defines "terms and conditions of employment" to include "wages" (quotation omitted)).

6

The majority attempts to diminish Berlin's holding by characterizing Berlin as a case about whether "a salary scale" constitutes "wages," and by citing Berlin as support for the proposition that "[w]ages paid to members of a bargaining unit . . . constitute a mandatory subject of negotiations between public employers and employee organizations." (Quotation omitted.) However, the dispute between the parties in Berlin was not whether "a salary scale" fell within the statutory definition of "wages," but, rather, whether a salary scale for performance of extracurricular duties constituted "a mandatory subject of bargaining under RSA chapter 273-A." Id. at 781-82 (quotation omitted). The language of Berlin's holding makes clear that, to fall within the definition of "wages" under the Public Employee Labor Relations Act, see RSA ch. 273-A (2010 & Supp. 2017), the compensation must be for activities that are within the scope of the bargaining unit member employee's duties. See Berlin, 125 N.H. at 782-84. Specifically, we held that "compensation for extracurricular activities, which is remuneration for services constituting an integral part of a teacher's duties, is within the term 'wages' and is therefore a mandatory subject of bargaining." Id. at 784 (emphasis added). We owe deference to our holding in Berlin, which the parties agree is controlling precedent. See Brannigan v. Usitalo, 134 N.H. 50, 53 (1991).

We must also afford deference to the PELRB on certain matters due to the standard of review established by the legislature. See RSA 541:13 (standard of review governing appeals brought pursuant to RSA chapter 541); RSA 273-A:14 (2010) (aggrieved party can appeal PELRB's final order pursuant to RSA chapter 541). We do not owe deference to the PELRB on issues of law, however. See Appeal of Hillsborough County Nursing Home, 166 N.H. 731, 733 (2014). We review the PELRB's legal rulings, including its interpretation of statutes and precedent, de novo. See id.; Appeal of N.H. Dep't of Transportation, 144 N.H. 555, 556-58 (1999) (reversing PELRB on issue of statutory interpretation); Appeal of State of N.H., 138 N.H. 716, 719-20 (1994) (abandoning this court's "policy of deferring to the PELRB on issues of law," including statutory interpretation, and "adopt[ing] a strict adherence to the standard of review set forth in RSA 541:13"); cf. Appeal of State Employees' Assoc. of N.H., 156 N.H. 507, 510-11 (2007) (affirming PELRB's decision because its reliance upon prior case with very similar "legally significant facts" was not "erroneous or unreasonable," but overruling that prior case prospectively).

Here, the PELRB conducted the "integral part" inquiry from Berlin and concluded, based upon its factual findings, that the tutoring in this case is distinguishable from the extracurricular duties involved in Berlin. Because the PELRB applied the correct inquiry from Berlin, its ruling of law on this issue is not erroneous. Absent an error of law, we cannot overturn the PELRB's decision "unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable." Appeal of Prof'l Fire Fighters of Hudson, 167

7

N.H. 46, 51 (2014); accord RSA 541:13; see also Appeal of Hollis Educ. Assoc., 163 N.H. 337, 340 (2012) ("To succeed on appeal, the association must show that the PELRB's decision is unlawful, or clearly unjust or unreasonable.").

Although the majority acknowledges this deferential standard of review at the outset of its analysis, it does not adhere to that standard in reviewing the PELRB's decision on the first issue. The majority's opinion concludes that "the PELRB erred as a matter of law" because, in the majority's view, "the tutoring services at issue here are, if anything, more closely related to the normal adjunct faculty members' duties than the extracurricular activities in Berlin were related to the teachers' regular duties."

Yet the PELRB explained in detail the basis for its conclusion that this case is "factually distinguishable" from Berlin "in a number of significant respects." Unlike the full-time teachers who taught school children in the Berlin public school district, see Berlin, 125 N.H. at 780, the adjuncts at CCSNH are "part-time faculty" who "are responsible for teaching a specific assigned course" to college students. The adjuncts are also responsible for making themselves available for what the PELRB termed "limited consultation" with their students — "before or after class, or by appointment." (Quotation omitted.) There is no expectation that adjuncts tutor any of the students, through the Academic Center for Excellence (ACE) or otherwise. The PELRB also noted that the activity at issue, tutoring, "is clearly not an extracurricular activity like a sport or other student activity at issue in [Berlin]. Instead, it is merely a service CCSNH offers to students who would like help completing class assignments." Another factual distinction is that, in Berlin, it was not the superintendent's "practice" to "fill extracurricular positions outside of the bargaining unit," even though this was permissible, id. at 781 (quotation omitted), whereas tutors at CCSNH are not only adjuncts but full-time professors, plus students "occasionally" serve as "'peer' tutors." Indeed, the director of ACE testified that "most" of the tutors she hires are not current adjuncts. Finally, and perhaps most importantly, the PELRB found that community college adjunct professors at CCSNH are not responsible for the "training of a child for citizenship and leadership," as was the case with the school children in Berlin. Id. at 782. For all of these reasons, the PELRB concluded that "tutoring cannot fairly be classified as 'an integral part' of an adjunct's duties."

Based upon these findings, which are supported by the record, I cannot say that the PELRB's conclusion on this issue is unjust or unreasonable. See Appeal of Town of Moultonborough, 164 N.H. 257, 261 (2012). Accordingly, in my view, the Union has failed to meet its burden of demonstrating that the PELRB's decision on this issue is "clearly unjust or unreasonable." Hollis Educ. Assoc., 163 N.H. at 340 (emphasis added). Under the circumstances, this court cannot substitute its judgment for that of the PELRB on this issue.

8

See Moultonborough, 164 N.H. at 261; Appeal of Laconia Patrolman Assoc., 164 N.H. 552, 555 (2013) ("This court is not free to substitute its judgment on the wisdom of an administrative decision for that of the agency making the decision." (quotation omitted)).  Therefore, I respectfully dissent from Section IIA of the majority's opinion.