HICKS, J.
The petitioner, the State Employees' Association of New Hampshire/Service Employees' International Union, Local 1984 (Union) appeals an order of the New Hampshire Public Employee Labor Relations Board (PELRB) dismissing its unfair labor practice complaint against the respondent, the Community College System of New Hampshire (CCSNH). The Union argues that the PELRB erred in ruling that CCSNH was not obligated to: (1) bargain over wages for on-campus tutoring services performed by adjunct faculty; and (2) compensate an adjunct faculty member for lost tutoring income resulting from his participation in collective bargaining negotiations. We reverse and remand.
I
The record supports the following facts. The Union is the exclusive bargaining representative of adjunct faculty "who are employed by CCSNH and who have taught at least five semesters in the last five years or who have currently begun their fifth semester of teaching and have taught four semesters within the last five years." The most recent collective bargaining agreement (CBA) between the parties covered the period from September 25, 2013, through June 30, 2016. The CBA classifies adjunct faculty as "part-time" employees and delineates that they are responsible for teaching specific assigned courses and making themselves available for student consultation "before or after class, or by appointment." CCSNH also hires adjunct faculty from the bargaining unit-along with full-time faculty and, occasionally, students-to provide tutoring services to its student body at the Academic Center for Excellence (ACE). This includes Rick Watrous, who has taught English at CCSNH as an adjunct professor since the 1990s, tutored students at ACE since 2010, and currently serves as a member of the Union's bargaining team.
The CBA does not address the subject of tutoring generally, or compensation for tutoring specifically. Accordingly, while negotiating a successor agreement in 2016, the Union sought to bargain over tutoring wages paid to adjunct faculty bargaining unit members. See RSA 273-A:3, I (2010) (requiring a public employer and a bargaining unit representative to negotiate in good faith over the "terms of *194 employment"). CCSNH, however, refused, maintaining that tutoring was not "bargaining unit work"-i.e., tutoring is not among the duties adjunct faculty are hired to perform. For the same reason, CCSNH refused to reimburse Watrous for ACE tutoring hours he forewent to attend collective bargaining negotiations. See RSA 273-A:11, II (2010) (requiring public employers to meet with a bargaining unit's representatives "during working hours without loss of compensation or benefits").
As a result, the Union filed an unfair labor practice complaint with the PELRB, alleging that CCSNH had violated its bargaining obligations under RSA chapter 273-A. Following an adjudicatory hearing, a three-member panel of the PELRB issued an order dismissing the complaint in its entirety. In its order, the panel, construing our decision in Appeal of Berlin Education Association, 125 N.H. 779, 780-84, 485 A.2d 1038 (1984), maintained that "public employers like CCSNH are only obligated to bargain over wages paid for the performance of bargaining unit work." Unanimously agreeing that tutoring did not fall within the scope of the adjunct faculty's "bargaining unit work," the panel found that CCSNH was not obligated to bargain over wages for these services. In turn, by a two-to-one decision, the panel determined that, because tutoring was outside the scope of the bargaining unit's work, CCSNH also did not commit an unfair labor practice when it refused to reimburse Watrous for his lost income. This appeal followed.
II
"RSA chapter 541 governs our review of PELRB decisions." Appeal of Prof'l Fire Fighters of Hudson, 167 N.H. 46, 51, 104 A.3d 1063 (2014) ; see RSA 273-A:14 (2010); RSA 541:2 (2007). "Pursuant to RSA 541:13 (2007), we will not set aside the PELRB's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable." Prof'l Fire Fighters of Hudson, 167 N.H. at 51, 104 A.3d 1063. "The PELRB's findings of fact are presumed prima facie lawful and reasonable." Id. ; see also RSA 541:13. "In reviewing the PELRB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record." Prof'l Fire Fighters of Hudson, 167 N.H. at 51, 104 A.3d 1063. "We review the PELRB's rulings on issues of law de novo." Id.
A
The Union first challenges the PELRB's determination that CCSNH is not obligated to bargain over compensation paid to adjunct faculty bargaining unit members for ACE tutoring.
The Public Employee Labor Relations Act obligates public employers and employee organizations to negotiate in good faith over the terms and conditions of employment. RSA 273-A:3 (2010). The Act defines "terms and conditions of employment," in relevant part, as "wages, hours, and other conditions of employment." RSA 273-A:1, XI (2010). Wages paid to members of a bargaining unit, therefore, constitute a mandatory subject of negotiations between public employers and employee organizations. Berlin, 125 N.H. at 783, 485 A.2d 1038.
That the foregoing is well-established is not questioned by CCSNH. According to CCSNH, however, "first and foremost" it must be determined whether the work being performed is "bargaining unit work." This is because, CCSNH reasons, our decision in Berlin dictates that it is only those *195 wages paid for the performance of "bargaining unit work" that must be negotiated. Maintaining that the PELRB properly recognized this distinction, CCSNH argues that we should defer to its findings that tutoring is not part of the adjunct faculty's "bargaining unit work" and, thus, wages paid for such services need not be negotiated.
In Berlin, we were called upon to determine whether a school board was obligated to negotiate with teachers over a salary scale for performance of extracurricular duties. Id. at 780, 485 A.2d 1038. Thus, our decision rested upon the subject matter that the teachers sought to negotiate-a salary scale. Id. at 783-84, 485 A.2d 1038.
Because the Act did not define the statutory term, we ascribed to the term "wages" its plain and obvious meaning of "monetary remuneration by an employer for labor or services." Id. at 783, 485 A.2d 1038 (quotation and ellipses omitted). We also recognized that other courts had "rather consistently held that such items as overtime pay, extra duty pay, vacation and holiday pay, bonus or merit pay, severance pay, shift differentials, and pensions are mandatory subjects of bargaining encompassed within the term 'wages.' " Id. at 783-84, 485 A.2d 1038 (quotation omitted). Given this expansive definition, it followed that the salary scale sought to be negotiated fell within the term "wages" and, thus, was a mandatory subject of bargaining. Id. at 784, 485 A.2d 1038. We also concluded contrary to the school board's primary argument, but consistent with a number of other jurisdictions, "that extracurricular activities are within the scope of a teacher's duties"-or constitute "bargaining unit work" as CCSNH terms it. Id. at 782, 485 A.2d 1038.
We need not consider whether Berlin should be interpreted to require that bargaining is mandatory any time the topic at issue concerns wages paid or to be paid to the employee by the employer, or whether, in addition to concerning wages, the subject matter must be work that is closely related to, or "within the scope" of, the employees' duties that are already the subject of bargaining. Even if we construe that case in the latter fashion, as CCSNH advocates, we conclude that the tutoring services at issue here are, if anything, more closely related to the normal adjunct faculty members' duties than the extracurricular activities in Berlin were related to the teachers' regular duties. Thus, the result reached in Berlin applies a fortiori to control the outcome here. Either way, the PELRB erred as a matter of law.
B
The Union next challenges the PELRB's consequent conclusion that, because tutoring was not "bargaining unit work," CCSNH did not commit an unfair labor practice when it refused to compensate Watrous for ACE tutoring hours he forewent to participate in collective bargaining negotiations.
RSA 273-A:11 (2010) requires a public employer to extend certain rights to the exclusive representative of a bargaining unit, in this case the Union, including the following: "A reasonable number of employees who act as representatives of the bargaining unit shall be given a reasonable opportunity to meet with the employer or his representatives during working hours without loss of compensation or benefits." RSA 273-A:11, II. Interpreting "without loss of compensation or benefits," id., to encompass only lost compensation or benefits deriving from "bargaining unit work," the PELRB concluded that Watrous was not entitled to reimbursement.
Although the PELRB's findings of fact are presumptively lawful and reasonable *196 and will not be disturbed if supported by the record, we are the final arbiters of legislative intent as expressed in the words of a statute considered as a whole and will set aside erroneous rulings of law. See Appeal of Laconia Patrolman Assoc., 164 N.H. 552, 555, 62 A.3d 787 (2013). "We do not look beyond the language of a statute to determine legislative intent if the language is clear and unambiguous." Appeal of Town of Deerfield, 162 N.H. 601, 603, 34 A.3d 734 (2011).
Nor, when engaging in statutory interpretation, will we "consider what the legislature might have said or add language that the legislature did not see fit to include." Laconia Patrolman Assoc., 164 N.H. at 555, 62 A.3d 787. Yet, as the Union asserts, that is exactly what the PELRB's interpretation of RSA 273-A:11 would require us to do. The term "bargaining unit work" is simply not found in the statutory provision.
Because the plain language of RSA 273-A:11, II obligates CCSNH to afford "[a] reasonable number of employees who act as representatives of the bargaining unit ... a reasonable opportunity to meet" for collective bargaining negotiations "during working hours without loss of compensation or benefits," we agree with the Union that CCSNH must compensate Watrous for the ACE tutoring hours he missed while attending such negotiations. We conclude, therefore, that the PELRB erred as a matter of law with regard to this finding as well and remand for proceedings consistent with this opinion.
Reversed and remanded.
LYNN, C.J., and BASSETT, J., concurred; DALIANIS, C.J., retired, specially assigned under RSA 490:3, concurred; HANTZ MARCONI, J., concurred in part and dissented in part.